[Cite as *State v. Wesemann*, 2012-Ohio-247.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No.     25908 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM WESEMANN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     CR 08 06 1914 |

DECISION AND JOURNAL ENTRY

Dated: January 25, 2012

WHITMORE, Judge.

{¶1}   Defendant-Appellant, William Wesemann, appeals from his convictions in the Summit County Court of Common Pleas.  This Court affirms.

I

{¶2}   Wesemann and the victim in this case, Melissa Riccardi, had a lengthy, tumultuous relationship with one another and two children, born in 2001 and 2004, respectively. The two lived in several different states over the years, but often separated for periods of time due to Wesemann's behavior.  In 2000, Wesemann was convicted of assaulting Riccardi while the two lived in Pennsylvania.  They later reconciled and moved to South Carolina, but Riccardi ultimately decided to end the relationship and move back to Ohio with their two children. Wesemann and Riccardi remained in phone contact after she left South Carolina.  Yet, Riccardi never told Wesemann where she lived because she was afraid of him and did not want him to come near her.

{¶3} Wesemann eventually located Riccardi and began staying with her at her apartment on Minson Way. According to Riccardi, she did not want Wesemann there, but was afraid to tell him to leave or to call the police due to how he might react. She also did not inform Wesemann's family that he was there because she did not want them to call the police on her behalf. Riccardi never added Wesemann to the lease at the apartment or gave him a key.

{¶4} On May 22, 2008, the police came to the apartment after receiving a 911 call from Riccardi. Riccardi informed the police that she and Wesemann had argued over the use of her cell phone as well as some other matters. During the encounter, Wesemann grabbed and twisted Riccardi's wrist and threw her cell phone at her. He also threatened to physically harm her father and her cousin if she called them for help. Because Wesemann fled the apartment when the police arrived, however, they were unable to locate him.

{¶5} After the incident on May 22, 2008, Riccardi took her two children to a hotel and remained there for about a week. She visited the apartment several times, but did not want to stay there because she feared Wesemann would return. Meanwhile, Wesemann contacted his sister to try to gain access to the apartment and reclaim his few belongings. Wesemann's sister, Emily Wesemann, refused to help him, but learned from Wesemann a few days later that he had gotten his belongings. Emily then phoned Riccardi and her family to inform them that Wesemann had gotten his things. When Riccardi learned what Wesemann had said, she immediately phoned the police and asked for an escort to go to her apartment with her. Riccardi and the police went to the apartment on May 27, 2008, and discovered that it had been extensively damaged and several of Riccardi's possessions were missing.

{¶6} On June 19, 2008, a grand jury indicted Wesemann on the following counts: (1) burglary, in violation of R.C. 2911.12(A)(2); (2) disrupting public services, in violation of R.C.

2909.04(A)(1); (3) criminal damaging or endangering, in violation of R.C. 2909.06(A)(1); and (4) two counts of domestic violence, in violation of R.C. 2919.25(A) and 2919.25(C), respectively. Another two counts of domestic violence, in violation of R.C. 2919.25(A) and 2919.25(C), were later added by way of supplemental indictment. The State then dismissed the two domestic violence charges in the original indictment, and a jury trial began on December 15, 2008. The jury found Wesemann guilty on all counts, with the exception of the disrupting public services count. The trial court sentenced Wesemann to a total of three years in prison.

{¶7} Wesemann appealed from his convictions, and this Court vacated his sentence and remanded the matter due to a post-release control error. *State v. Wesemann*, 9th Dist. No. 24588, 2009-Ohio-5168. Upon remand, the trial court properly advised Wesemann of post-release control and issued a new sentencing entry. Wesemann now appeals from his convictions and raises one assignment of error for our review.

II

Assignment of Error

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT WATKINS' MOTION FIR (sic) JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29."

{¶8} In his sole assignment of error, Wesemann argues that the trial court erred by denying his Crim.R. 29 motion, as the State failed to present sufficient evidence to support his convictions. We disagree.

{¶9} Initially, we note that the body of Wesemann's brief contains a limited argument that his convictions are against the manifest weight of the evidence. His captioned assignment of error, however, only addresses sufficiency and the crux of his argument sounds in sufficiency,

not weight. Accordingly, we limit our review to the sufficiency of the evidence. *See State v. Johnson*, 9th Dist. No. 25525, 2011-Ohio-3941, ¶ 11.

{¶10} "A review of a Crim.R. 29 motion is a review of the sufficiency of the evidence." *State v. Morris*, 9th Dist. No. 25519, 2011-Ohio-6594, ¶ 12. In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

"In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

> No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person * * * is present or likely to be present, with purpose to commit in the habitation any criminal offense. R.C. 2911.12(A)(2).

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). The foregoing offense constitutes the crime of burglary. R.C. 2911.12(D).

{¶11} "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [k]nowingly, by any means." R.C. 2909.06(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his

conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). The foregoing offense constitutes the crime of criminal damaging or endangering. R.C. 2909.06(B).

{¶12} R.C. 2919.25 governs the offense of domestic violence and provides, in relevant part, as follows:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

Domestic violence will be elevated to a felony of the fourth degree if an offender has a qualifying prior conviction. R.C. 2919.25(D)(3).

{¶13} Riccardi testified that Wesemann stayed with her for several months before the incidents that occurred in May 2008. Riccardi explained that she did not want Wesemann to live with her, but would not force him to leave because she was afraid for herself and her children. She testified that she was the only person on the lease at her apartment, never gave Wesemann a key to the apartment, and always locked the apartment when she was not at home. Riccardi stated that she was generally home all day and all evening, so Wesemann had access to the apartment while she was there.

{¶14} Riccardi testified that Wesemann grabbed and twisted her wrist on May 22, 2008, when the two had a fight over her cell phone. Wesemann caused Riccardi to drop the phone and later threw it at her. He also threatened to hurt several of her family members if she tried to call for help. After Wesemann hurt Riccardi, he went upstairs to yell at the children. At that point,

she dialed 911, but hung up the phone so that Wesemann would not see her on it. The police later arrived, and Wesemann fled. Officer Michael Rinn reported to the scene and testified that he observed red marks on Riccardi's wrist. Emily Wesemann also testified that she saw bruises on Riccardi's wrist after the incident and that Riccardi was scared of her brother because of what he had done.

{¶15} The State introduced a certified copy of Wesemann's 2000 conviction for simple assault in Pennsylvania and relied upon the prior conviction to elevate the offense level of Wesemann's domestic violence charge. *See* R.C. 2919.25(D)(3). Defense counsel stipulated that Riccardi was the victim in the 2000 case, but maintained that simple assault in Pennsylvania is not a crime that is "substantially similar" to domestic violence in Ohio. *See id.* The Pennsylvania simple assault statute provides, in relevant part, as follows:

{¶16} A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury * * *. 18 Pa.C.S.A. § 2701(a)(1)-(3).

Wesemann argues that his fourth-degree felony conviction is based on insufficient evidence because the State failed to prove that simple assault is substantially similar to domestic violence. Yet, Wesemann does not offer any case law in support of his contention that simple assault is not substantially similar to domestic violence. App.R. 16(A)(7). He simply avers, without any support, that "the Pennsylvania offense of 'simple assault' is similar to O.R.C. 2919.25(A), but not substantially similar * * *." As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). We, therefore, reject

Wesemann's argument that the State failed to prove his prior conviction for purposes of elevating his domestic violence offense level.

{¶17} With regard to his criminal damaging conviction, Wesemann argues that it is based on insufficient evidence because the State failed to prove the cause of the damage to Riccardi's apartment. Riccardi, however, testified that the apartment was in fine condition when she visited it a few days before May 27, 2008, and that she had locked the apartment the last time she was there. Leslie Horton, Riccardi's neighbor, testified that she saw Wesemann entering and exiting the apartment in the afternoon "a day or so" before the police came on May 27th. At that time, Horton saw Wesemann remove a couch from the apartment with the help of some other people and throw it out in a dumpster across the street. The police also found a blood stain in the apartment, and the Bureau of Criminal Identification and Investigation confirmed that Wesemann could not be eliminated as the source of the blood. Further, Wesemann called his sister and told her he had retrieved his possessions. To retrieve his possessions, it would have been necessary for Wesemann to gain access to Riccardi's apartment.

{¶18} The State provided circumstantial evidence here that Wesemann damaged Riccardi's apartment. "The Ohio Supreme Court has held that '[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *.'" *State v. Cook*, 9th Dist. No. 25573, 2011-Ohio-4391, ¶ 16, quoting *State v. Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Viewing the evidence in a light most favorable to the State, it was reasonable for the jury to conclude that Wesemann caused the damage to Riccardi's apartment. Thus, Wesemann's criminal damaging conviction is not based on insufficient evidence.

{¶19} Finally, Wesemann argues that his burglary conviction is based on insufficient evidence because the State failed to prove that: (1) he trespassed in the apartment where he had

been living for several months; (2) it was likely someone would be present at the apartment when he entered it; and (3) he intended to commit any criminal offense in the apartment. Riccardi testified, however, that she did not give Wesemann permission to enter her apartment after she called the police and he fled. She further testified that Wesemann's name was not on the lease, he did not have a key to the apartment, and she locked it when she left to stay at a hotel with her children. Emily Wesemann also testified that Wesemann called her to try to get his things from the apartment "because he couldn't get in there." Based on the foregoing testimony, a rational trier of fact could have concluded that Wesemann trespassed in the apartment.

{¶20} The evidence also supports the conclusion that it was likely someone would be present when Wesemann entered the apartment. Riccardi testified that she usually was home every day and every night. Furthermore, she had two small children, and the vast majority of their belongings remained at the apartment. Although she stayed at a hotel the week that Wesemann entered her apartment, Riccardi testified that she went back to the apartment several times during the week to pick up additional items that she needed. Moreover, it is unclear that Wesemann knew Riccardi was staying at a hotel instead of at her apartment. A rational tier of fact, therefore, could have found that it was likely someone would be present when Wesemann entered the apartment.

{¶21} Further, a rational trier of fact could have concluded that the State presented sufficient evidence of Wesemann's intent to commit a criminal act. Riccardi testified that Wesemann caused an extensive amount of damage to her apartment. Horton, Riccardi's neighbor, also testified that she saw Wesemann throw Riccardi's couch into a dumpster across the street from her apartment. Viewing the evidence in a light most favorable to the State, the

jurors could have inferred that Wesemann went to Riccardi's apartment with the intent to commit a criminal offense therein.

**{¶22}** The record supports the conclusion that a rational trier of fact could have found the elements of burglary, criminal damaging, and domestic violence were proven beyond a reasonable doubt. Consequently, Wesemann's convictions are not based on insufficient evidence and his sole assignment of error is overruled.

III

**{¶23}** Wesemann's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
<u>CONCUR</u>

<u>APPEARANCES</u>:

RHONDA L. KOTNIK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.