[Cite as *State v. Lehman*, 2018-Ohio-1145.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28724 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN LEHMAN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2017-01-0200 |

DECISION AND JOURNAL ENTRY

Dated: March 28, 2018

CALLAHAN, Judge.

{¶1} Defendant-Appellant, John Lehman, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} The victims in this case are a married couple who reside in a single-family home in Richfield. On the morning of September 14, 2016, someone burglarized their home while they were at work. The wife homeowner discovered the break-in when she came home at lunchtime to care for their dogs. Video surveillance taken from the home, in conjunction with further investigation, led to the police identifying Mr. Lehman as the perpetrator.

{¶3} A grand jury indicted Mr. Lehman on a single count of burglary, in violation of R.C. 2911.12(A)(2). Mr. Lehman waived his right to a jury, and the matter proceeded to a bench trial. On the day of trial, Mr. Lehman stipulated to all of the essential elements of his charge, save for the one requiring the State to prove that someone was likely to be present in the home

when he burglarized it. After hearing the evidence, the court found him guilty as charged and sentenced him to six years in prison.

{¶4} Mr. Lehman now appeals from his conviction and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

[MR.] LEHMAN'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, MERITING REVERSAL.

{¶5} In his sole assignment of error, Mr. Lehman argues that his burglary conviction is against the manifest weight of the evidence. Specifically, he argues that the court lost its way when it found that someone was likely to be present at the time he burglarized the homeowners' residence. This Court disagrees.

{¶6} When a defendant argues that his conviction is against the weight of the evidence, this court must review all of the evidence before the trial court.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶7} A person commits burglary when he (1) uses force, (2) to trespass, (3) in an occupied structure, (4) where someone other than his accomplice temporarily or permanently resides, (5) for the purpose of committing a criminal offense, (6) "when [someone] other than an accomplice * * * is present or likely to be present * * *." R.C. 2911.12(A)(2). The law does not presume that someone is "likely to be present" simply because a structure is "occupied." *See State v. Fowler*, 4 Ohio St.3d 16, 18-19 (1983), quoting *State v. Wilson*, 58 Ohio St.2d 52, 59 (1979). Instead, the State must separately prove each element. *See Fowler* at 18-19, quoting *Wilson* at 59. The "likely to be present" element concerns "the probability or improbability of actual occupancy occurring during the time of the offense, determined by all the facts surrounding that occupancy." *State v. Najeway*, 9th Dist. Summit No. 13489, 1988 Ohio App. LEXIS 4269, *5-6 (Oct. 26, 1988).

> Where the [S]tate proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the [S]tate has presented sufficient evidence to support a charge of [] burglary * * *.

*State v. Treichel*, 9th Dist. Lorain No. 95CA006296, 1996 Ohio App. LEXIS 4389, *8 (Oct. 2, 1996), quoting *Fowler* at 19, quoting *State v. Kilby*, 50 Ohio St.2d 21 (1977), paragraph one of the syllabus. The trier of fact may infer "from the evidence presented [that] someone was likely to be present on the day in question." *State v. Walters*, 9th Dist. Medina No. 2775-M, 1998 Ohio App. LEXIS 4615, *8 (Sept. 30, 1998).

{¶8} The wife homeowner testified that she habitually left her home for work between 6:30 and 7:00 a.m. and worked until 4:00 p.m. In between those times, however, she regularly returned home for a lunch hour to care for several dogs. Two of those dogs belonged to her and her husband, and the third belonged to their daughter and her fiancé. The wife homeowner

testified that she did not always take her lunch hour at the same time and that she regularly returned home for forgotten items, to care for the dogs, or for various appointments because her office was located less than three miles away. On the day of the burglary, she left her office at approximately 11:45 a.m. to return home for lunch.

{¶9} The husband homeowner testified that he left for work around 6:30 a.m. the morning of the burglary and was scheduled to work until 4:00 p.m. He admitted that he seldom left work once he arrived there, but stated that his schedule could vary from day-to-day and week-to-week. Because he worked on weekends, he had two weekdays off instead and sometimes had to change shifts to cover for his co-workers. Further, he testified that it was common for him to take vacation days in September because summer was a busy time and he risked losing his accrued vacation time each year if he did not use it.

{¶10} There was testimony that the homeowners' daughter and her fiancé came to the homeowners' residence twice each weekday because, while they were working, their dog stayed with the homeowners' dogs. The fiancé testified that, around the time of the burglary, he dropped off their dog between 8:30 a.m. and 9:30 a.m. on Mondays, Tuesdays, and Thursdays, and his fiancée dropped off the dog before 8:00 a.m. on Wednesdays and Fridays. He also testified, however, that his schedule varied depending on his clients.

{¶11} A second homeowner testified that he was home at approximately 8:15 a.m. on the day of the burglary. While walking to his laundry room, he was startled to see a man standing outside his front door. He testified that a large portion of his front door was made of glass, so he could clearly see the man through the door. Noting that his presence also appeared to have startled the man, he approached the front door and spoke to the man without opening it. According to the second homeowner, when he asked the man what he was doing there, the man

said "something about a lawn mower on Craigslist." The second homeowner then expressed that he had no knowledge of that item and watched as the man left, climbed into an SUV, and drove away. The defense stipulated that Mr. Lehman was the man at the second homeowner's residence that morning.

{¶12} Mr. Lehman testified in his own defense. He testified that he went to the homeowners' and the second homeowner's residences on the day of the burglary because he was trying to locate jewelry that had been stolen from his uncle. Believing that individuals who resided in the two households had purchased the jewelry on the internet, he went there intending to buy it back. Mr. Lehman claimed that he went to the homeowners' residence around 9:30 a.m. the day before the burglary and tried knocking on their door for 5-10 minutes. When no one answered, he decided to return the following day. Mr. Lehman testified that, on the day of the burglary, he went to the second homeowner's residence before driving to the homeowners' residence. He testified that he was "[p]ositive no one was home" at the homeowners' residence because he knocked for several minutes to no avail and a jogger he stopped told him the residents were at work. On cross-examination, he conceded that he lied to the police when they interviewed him about this matter.

{¶13} Mr. Lehman argues that the trier of fact lost its way by convicting him because the evidence weighs in favor of the conclusion that no one was likely to be present when he broke into the homeowners' residence. He notes that, at the time of the burglary, both of the homeowners were at work and there was evidence that their daughter had already left her dog at their house. According to Mr. Lehman, the homeowners and their daughter's fiancé purposely made it appear that there were frequent variations in their schedules when, in fact, there were not. He argues that they were well aware that the "likely to be present" element was the only

contested issue in the case because they were present when the parties discussed that issue at the start of trial and, on cross-examination, admitted discussing that issue in advance of trial. Mr. Lehman claims that those discussions caused them to exaggerate their schedule variations. As such, he asserts that their testimony was not credible.

{¶14} Having reviewed the record, this Court cannot conclude that the trier of fact lost its way when it found that someone was "likely to be present" at the homeowners' residence at the time of the burglary. "'People come home for many reasons – personal, sickness, lunch, etc.'" *Treichel*, 1996 Ohio App. LEXIS 4389, at *9, quoting *State v. Tucker*, 9th Dist. Lorain No. 89CA004533, 1990 Ohio App. LEXIS 3191, *6 (Aug. 1, 1990). The wife homeowner testified that she worked less than three miles from home, came home on a regular basis for lunch, and otherwise regularly returned home during the week for forgotten items or appointments. *See State v. Wesemann*, 9th Dist. Summit No. 25908, 2012-Ohio-247, ¶ 20. *Compare State v. Durham*, 49 Ohio App.2d 231 (1st Dist.1976) (evidence on the "likely to be present" element lacking where the victim lived alone, usually worked during the time of the break in, and only testified to an occasional variance in his routine). Moreover, her husband and her daughter's fiancé both testified to a range of variation in their work schedules. There was evidence that either the homeowners' daughter or her fiancé came to the home each morning to drop off their dog and, when the fiancé brought the dog, he generally arrived during the timeframe in which the burglary occurred. Based on all of the foregoing testimony, the trier of fact reasonably could have inferred that someone was likely to be present at the time of the break in. *See Wesemann* at ¶ 20; *Tucker* at *6; *Walters*, 1998 Ohio App. LEXIS 4615, at *9; *Treichal* at *9; *State v. Cope*, 9th Dist. Lorain No. 3690, 1984 Ohio App. LEXIS 11456, *5-6 (Sept. 12, 1984).

**{¶15}** To the extent Mr. Lehman asserts that the State's witnesses exaggerated their testimony, "the trier of fact [was] in the best position to determine [their] credibility * * * and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. "A verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Mr. Lehman has not shown that this is the exceptional case where the evidence weighs heavily against his conviction. *See Otten*, 33 Ohio App.3d at 340. Consequently, this Court overrules his sole assignment of error.

### III.

**{¶16}** Mr. Lehman's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

KRISTEN KOWALSKI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.