DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Michael Higgins, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On June 22, 2005, in Case No. 2005-06-2127(B), Appellant was indicted on one count of complicity to commit passing bad checks, in violation of R.C. 2913.11/2923.03, a felony of the fifth degree and one count of complicity to commit grand theft, in violation of R.C.2913.02(A)(3)/2923.03, a felony of the fourth degree. Within a few days of his indictment under Case No. 2005-06-2127(B), *Page 2 
Appellant was indicted in Case No. 2005-09-3298(A) on several other charges related to a check cashing scheme.
 {¶ 3} Appellant filed a motion to transfer and for joinder/consolidation of his cases. The trial court did not rule on the motion. The cases were joined for purposes of trial, although the cases proceeded under separate case numbers. Appellant was convicted of both counts under Case No. 2005-06-2127(B) and was sentenced to one year incarceration for the conviction of complicity to commit grand theft and ten months incarceration for the conviction of complicity to commit passing bad checks. The trial court ordered that Appellant serve his sentences under Case No. 2005-06-2127(B) concurrently with each other and concurrently with the sentences imposed in Case No. 2005-09-3298(A).
 {¶ 4} Appellant timely appealed his convictions under Case No. 2005-06-2127(B), raising one assignment of error for our review. However, Appellant has failed to file a notice of appeal under Case No. 2005-09-3298(A). Accordingly, the only convictions before this Court are Appellant's convictions for complicity to commit passing bad checks and complicity to commit grand theft.
 II. ASSIGNMENT OF ERROR "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 3 
 {¶ 5} In Appellant's sole assignment of error, he contends that his convictions were not supported by the manifest weight of the evidence. We disagree.
 {¶ 6} The applicable standard when reviewing a claim based on manifest weight of the evidence in a criminal case is as follows:
 "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Mendoza, 137 Ohio App.3d 336, 347, 2000-Ohio-1689, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387 (overruled on other grounds).
The Ohio Supreme Court recognized that
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42.
 {¶ 7} However, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact to determine. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, a reviewing court's discretion to reverse should be invoked "only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant." State v. Jones (2005), 9th Dist. No. 22545,2005-Ohio-5502 at ¶ 11 citing State v. Otten (1986), 33 Ohio App.3d 339,340. *Page 4 
 {¶ 8} Appellant was convicted of complicity to commit grand theft, in violation of R.C. 2913.02(A)(3)/2923.03, and complicity to commit passing bad checks, in violation of R.C. 2913.11/2923.03. R.C.2913.02(A)(3) provides that, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]" R.C.2913.11, provides:
 "(B) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument."
R.C. 2901.22(A) defines the culpable mental states of purpose and knowledge as follows:
 "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
 "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 9} Complicity has been codified in R.C. 2923.03, which provides, in pertinent part to the instant appeal, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). The Ohio Supreme *Page 5 
Court has set forth the requirements for a conviction of complicity by aiding and abetting:
 "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson (2001), 93 Ohio St.3d 240, syllabus.
 {¶ 10} In this case, several individuals testified regarding Appellant's involvement in a check cashing scheme. Specifically, six individuals (Latoya Chapman, Yolanda Chapman, Rasheed Evans, Sparkle Miles, Linda Wilkerson and Lawrence Jennings) testified that Appellant gave them money to open bank accounts and then used these accounts to cash fraudulent checks and to make fraudulent deposits. These individuals described two check-cashing schemes orchestrated by Appellant. Both schemes involved Appellant paying these individuals, either in cash or in merchandise, to open bank accounts and permit him to siphon funds. In one scheme, these individuals would sign checks and then give them to Appellant. Appellant and these individuals would then deposit these checks into bank accounts and withdraw money from the accounts before the checks cleared the bank. On most occasions, the perpetrators were permitted to withdraw these funds before the deposited checks actually cleared and before the funds were actually transferred. The other scheme involved these individuals *Page 6 
writing worthless checks on accounts to local stores for the purchase of merchandise. Appellant retained most of the money generated from this scheme.
 {¶ 11} Appellant's conviction for complicity to commit passing bad checks concerned a KeyBank check issued in July of 2004 in the amount of $2500 from the account of John Sanders payable to Nikelle Sims. Mr. Sanders testified twice. On the first day of trial, Mr. Sanders testified that in July of 2004, he gave a check to Ms. Sims in the amount of $2500. When the State showed the check to Mr. Sanders, he stated that he did not recall writing this check. When asked about the signature on the check, Mr. Sanders testified that the signature was not his. Mr. Sanders later testified that he remembered writing the check to Ms. Sims but that he thought she had given it back to him. Mr. Sanders testified that the only money coming into his account during this time was from sham deposits. He could not explain why he was writing a check to Ms. Sims for $2500 since he did not have the funds to cover this check.
 {¶ 12} Mr. Sanders initially testified that he had not dealt with Appellant with regard to the checks and that Appellant was not the person that told him to write checks from his account. Mr. Sanders returned to the witness stand on the second day of trial. He explained that he had not told the truth when he testified on the first day of trial. He further testified that after he testified on the first day of trial, his wife received a phone call from a detective investigating him in another matter. According to Mr. Sanders, the detective told his wife that if he did not *Page 7 
come "back down here today then he could bring some more charges on some checks."
 {¶ 13} Mr. Sanders testified that he and Appellant are cousins and that he interacted with Appellant almost every day during the commission of the check cashing scheme. Mr. Sanders' role in the scheme involved signing checks from his account and giving the checks to Appellant or Calvin Fikes.[1] Appellant paid Mr. Sanders to sign the signature line on checks and then give the signed checks to Appellant.
 {¶ 14} Ms. Sims testified that she is not related to Appellant but has known him her whole life. She testified that she met Mr. Sanders through Appellant. Ms. Sims testified that she did not remember getting a check from Mr. Sanders for $2500 in July of 2004. She acknowledged that her name was signed on the back, signifying that the check was deposited into the bank. However, she testified that her name was spelled incorrectly on the front and back. She testified that Appellant was not involved with her checking transactions.
 {¶ 15} Mark Thomas, a fraud investigator for Charter One, testified for the State. Mr. Thomas testified that a $2500 check issued by John Sanders between July 22, 2004 and July 24, 2004 and made payable to Ms. Sims was deposited into her Charter One account. This check was dishonored for insufficient funds. *Page 8 
 {¶ 16} Detective Lovelace testified that she is employed by the Akron Police Department in the Financial Crimes Division. Detective Lovelace testified that in 2004 she began investigating a check cashing scheme. Detective Lovelace discovered multiple checks that had been issued among a group of individuals. Many of these checks were dishonored, resulting in losses to various area banks. In the course of Detective Lovelace's investigation, she interviewed the individuals involved in the scheme. She discovered that the individuals did not all know one another but that Appellant was the "common denominator" in this check cashing scheme.
 {¶ 17} Detective Lovelace testified regarding her conversation with Appellant. Appellant told Detective Lovelace that he knew all of the people who had cashed these fraudulent checks. He also told Detective Lovelace that he had shown these people how to commit these crimes. Appellant denied that he had compensated these individuals for setting up fraudulent accounts. He further denied knowing anything about the criminal activity. In addition, Appellant stated that he had not received anything from these individuals.
 {¶ 18} Appellant's conviction for complicity to commit grand theft was based on Ms. Sims' checks that resulted in a loss of approximately $8054.61 to Charter One. Mr. Thomas testified that four checks written on accounts for John Sanders, Sparkle Miles, and Lawrence Jennings were deposited into Nikelle Sims' Charter One account between July 22, 2004 and July 24, 2004. Each of the checks *Page 9 
listed Ms. Sims as the payee. Each check was dishonored for insufficient funds. Charter One paid out $8054.61 from this account before the checks were returned for insufficient funds.
 {¶ 19} The witnesses' testimony establishes that Appellant acted with "purpose to defraud" when he caused the issuance and transfer of these checks with the knowledge that the checks would be dishonored or that payment would be stopped. R.C. 2913.11(B); R.C. 2923.03. Mr. Sanders, Ms. Miles and Mr. Jennings testified that they opened bank accounts at Appellant's request, gave Appellant their checkbooks after opening the accounts or signed the checks and then gave the checks to Appellant. They all testified that Appellant compensated them for these acts. The witnesses' testimony demonstrates that Appellant acted with purpose to steal money from the banks by orchestrating the commission of the crime, i.e. the check cashing scheme. R.C. 2913.02(A)(3); R.C. 2923.03.
 {¶ 20} Appellant primarily contests Mr. Sanders' credibility. Appellant contends that Mr. Sanders lacks credibility because he changed his initial testimony that Appellant was not involved in the scheme after a detective threatened him with further charges. Appellant also asserts that Mr. Sanders' credibility is undermined by the fact that he accepted a lesser sentence (probation instead of incarceration) in exchange for his testimony.
 {¶ 21} The Ohio Supreme Court has held that "[t]he testimony of a witness is not rendered inadmissible merely because he expects or has been promised *Page 10 
immunity from prosecution, a lesser penalty, or dismissal of a pending charge." State v. Wolery (1976), 46 Ohio St.2d 316, 323, citingCaton v. United States (C.A. 8 1969), 407 F.2d 367, 371. The jury may consider the promise of leniency offered by the State in exchange for testimony when the jury considers the credibility of the witness. Id. at 319-320.
 {¶ 22} Here, the jury was aware of the means by which Mr. Sanders' testimony was obtained. Accordingly, the jury was free to give Mr. Sanders' testimony whatever weight they believed it deserved. State v.Pollard (Mar. 25, 1994), 11th Dist. No. 93-A-1767, at *4, citingWolery, 46 Ohio St.3d at paragraph one of the syllabus. The weight of the evidence and credibility of the witnesses are primarily for the trier of fact to determine. We will not disturb their findings.DeHass, 10 Ohio St.2d at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses. In this case the jury believed Mr. Sanders' testimony.
 {¶ 23} Appellant did not testify and presented no witnesses on his behalf. Given the testimony presented by the State, this is not a case where the evidence weighs heavily in favor of Appellant, meriting a new trial. Therefore, Appellant's conviction was not against the manifest weight of the evidence. Accordingly, Appellant's sole assignment of error is overruled. *Page 11 
 III. {¶ 24} Appellant's sole assignment of error is overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 12 
SLABY, P. J. CARR, J. CONCUR
[1] Mr. Sanders testified that Calvin Fikes was his cousin with whom he resided. Mr. Sanders also testified that Mr. Fikes is now deceased. *Page 1