[Cite as *Wiseman v. Wiseman*, 2014-Ohio-2002.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| | |
|---|---|
| JEBIDIAH O. WISEMAN | C.A. No.    13CA0009-M |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMIE E. WISEMAN | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | CASE No.    08DR0406 |

DECISION AND JOURNAL ENTRY

Dated: May 12, 2014

---

CARR, Judge.

**{¶1}** Appellant Jebediah Wiseman appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, that found him in contempt. This Court affirms.

I.

**{¶2}** Jebediah Wiseman ("Husband") and Jamie Wiseman ("Wife") filed a joint petition for dissolution of their almost three-year marriage. The parties executed a separation agreement on July 30, 2008, that became incorporated into their decree of dissolution of marriage. The separation agreement included a provision that purported to dispose of the parties' marital home, located in Chippewa Lake. Section 4 of the agreement addressed the real property and imposed obligations on the parties. Wife subsequently filed a motion for Husband to show cause as to why he should not be held in contempt for failing to comply with the terms

of the parties' separation agreement as it related to the payment of expenses associated with the marital home.

{¶3} The magistrate held a hearing on Wife's motion. Husband, Wife, a prior attorney for Husband, and the parties' realtor testified. The magistrate issued a decision in which he found Husband in contempt for failing to comply with the terms of the parties' separation agreement after expressly concluding that the terms of the agreement were not ambiguous. The trial court issued a judgment entry the same day, adopting the magistrate's decision, finding Husband in contempt, imposing a sentence, and scheduling a purge hearing. Husband filed timely objections to the magistrate's decision.

{¶4} The trial court held a hearing on Husband's objections. Although neither party appeared, the court heard the arguments of counsel. The trial court issued a judgment entry overruling Husband's objections. Husband appealed and this Court dismissed his appeal for lack of a final, appealable order because the trial court had failed to independently enter judgment. The trial court attempted to independently enter judgment, and Husband appealed again. This Court dismissed the second appeal because the trial court had again failed to independently enter judgment. The trial court issued another judgment, overruling Husband's objections and independently entering judgment. The domestic relations court found Husband in contempt for failing to comply with the terms of the parties' separation agreement that the trial court expressly concluded were not ambiguous. Husband has appealed and raises four assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE LOWER COURT ERRED IN ITS CONSTRUCTION OF THE SETTLEMENT AGREEMENT OF THE PARTIES AND ITS JUDGMENT ENTRY OF OCTOBER 2, 2012.

**{¶5}** Husband argues that the trial court erred in its construction of the parties' separation agreement regarding Husband's possession of the marital home. This Court disagrees.

**{¶6}** The trial court concluded that the parties' separation agreement, specifically section 4 which addressed "Real Property," was not ambiguous. Thereafter, the lower court concluded that Husband violated the terms of the agreement regarding his obligation to pay for the expenses related to the marital home. The trial court, therefore, found Husband in contempt and imposed a sentence.

**{¶7}** "Separation agreements are contracts, subject to the same rules of construction as other contracts, to be interpreted so as to carry out the intent of the parties." *Musci v. Musci*, 9th Dist. Summit No. 23088, 2006-Ohio-5882, ¶ 42. While a trial court retains broad discretion to clarify ambiguity in a contract, the determination whether a contract is ambiguous is a matter of law. *Hyder v. Pizer*, 9th Dist. Summit No. 20791, 2002 WL 570256 (Apr. 17, 2002); *see also In re Dissolution of Marriage of Seders*, 42 Ohio App.3d 155, 156 (9th Dist.1987). Accordingly, this Court reviews the trial court's determination whether the agreement was ambiguous de novo. *See Wintrow v. Baxter-Wintrow*, 9th Dist. Summit No. 26439, 2013-Ohio-919, ¶ 11.

**{¶8}** Where no ambiguity exists, the trial court may not construe, clarify or interpret the parties' agreement to mean anything outside of that which it specifically states. *Dzeba v. Dzeba*, 9th Dist. Summit No. 16225, 1993 WL 498181 (Dec. 1, 1993). Specifically, "the trial

court must defer to the express terms of the contract and interpret it according to its plain, ordinary, and common meaning." *Hyder*, citing *Forstner v. Forstner*, 68 Ohio App.3d 367, 372 (11th Dist.1990). Moreover, the parties' agreement is not ambiguous where its terms are clear and precise. *Ryan v. Ryan*, 9th Dist. Summit No. 19347, 1999 WL 980572 (Oct. 27, 1999), citing *Lawler v. Burt*, 7 Ohio St. 340, 350 (1857). "In arriving at the meaning of any part of the contract, the instrument must be read in its entirety in order to give effect to the intention of the parties." *Rock of Ages Memorial, Inc. v. Braido*, 7th Dist. Belmont No. 00 BA 50, 2002 WL 234666, *2 (Feb. 8, 2002). On the other hand, "[w]here there is confusion over the interpretation of a particular clause in a separation agreement, the trial court has the power to hear the matter, clarify the confusion, and resolve the dispute." *Musci* at ¶ 42.

{¶9} Section 4 of the parties' separation agreement addresses issues regarding real property. That provision provides in toto:

> The parties have an interest in the property known as 5571 Chippewa Road, Chippewa Lake, Ohio 44215. Title to the property is in both names. The financing is in Wife'[s] name only. Wife has vacated the property, or will do so upon execution of this agreement, and Husband shall retain exclusive possession of the property. So long as the property is in Husband's possession, he shall be responsible for all payments and expenses relative to the property, including, but not limited to, payment of the mortgage loan, real estate taxes, insurance and maintenance. He shall indemnify and hold Wife harmless on real estate related obligations.
>
> Husband will sell the property at a time of his choosing. Wife stipulates there is no marital equity in the property as of execution of this agreement. Upon notifying Wife of his intention to sell the real estate, Wife shall cooperate to facilitate the sale including, but not limited to, providing the escrow agent a quit claim deed conveying her interest in the property to Husband or to a purchaser. All net proceeds of sale shall be payable to Husband and shall be Husband's separate property. In the event Wife fails to cooperate in this regard, Husband shall no longer be responsible for real estate related expenses.

{¶10} There is no dispute regarding the following facts. Wife vacated the marital home in September 2008, and she gave Husband her keys. Except for one brief visit to see the

couple's dogs shortly after the parties executed the agreement, Wife never returned to the marital home. Husband lived in the home until he left in July 2010, for a job in West Virginia. At that time, the parties executed an exclusive listing agreement with a realtor to sell the home. Approximately five weeks later, the parties executed an amendment to the listing agreement, reducing the listing price by $10,000. Husband gave his keys to the realtor.

{¶11} Husband continued to pay the expenses related to the home, including the mortgage, taxes, insurance, and maintenance, through the end of November 2010. Without Wife's knowledge, Husband executed a quit claim deed to Wife on October 27, 2010. Husband's attorney for the land transfer signed a "statement of reason for exemption from real property conveyance fee" as Wife's representative, although Wife had no knowledge of the transfer and did not authorize the attorney to act on her behalf. Husband did not inform Wife of the transfer, and she did not learn of it until she received a packet from Husband's attorney's office containing a copy of the quit claim deed and an application for homeowner's insurance. Husband did not immediately respond to Wife's text messages inquiring what the packet meant. Wife began paying all expenses related to the real estate in December 2010. She filed her contempt motion against Husband, seeking reimbursement of the sums she paid due to Husband's alleged failure to comply with the terms of the parties' separation agreement.

{¶12} At the hearing on Wife's motion, it became clear that the parties did not agree regarding the meaning and ramifications of the provisions addressing Husband's "exclusive possession" of the property and his financial obligations "[s]o long as" the property was in his possession. For example, Husband argues that he was not bound to retain possession of the marital home notwithstanding the absence of the sale of the property. In fact, he argues that he was permitted to relinquish his possession of the property and that he could do so by merely

abandoning the property. Moreover, Husband argues that his execution of the quit claim deed to Wife also constituted relinquishment of his possession. Nevertheless, this Court concludes that the parties' agreement is not ambiguous, that the trial court did not err in concluding the same, and that Husband has misconstrued the plain meaning of the terms to serve his changed circumstances.

{¶13} The parties' agreement does not define the terms "possession" and, more specifically, "exclusive possession." It is well settled, however, that "common, undefined words appearing in a written instrument 'will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 2004-Ohio-7102, ¶ 23, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. Black's Law Dictionary defines "possession" as "* * * having or holding property in one's power; the exercise of dominion over property. The right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object. The detention or use of a physical thing with the intent to hold it as one's own. Something that a person owns or controls." *Black's Law Dictionary* 1201 (8th Ed.2004). "Exclusive possession" is defined as "[t]he exercise of exclusive dominion over property, including the use and benefit of the property." *Id.* at 1202.

{¶14} The parties' agreement grants to Husband the exclusive possession of the marital home. Moreover, the agreement directs that Husband shall retain such possession, and that he will be responsible for all real estate related obligations and hold Wife harmless on those expenses while the property remains in his possession. The provision allows Husband to sell the property. Reading these provisions together, it is clear that the agreement provides that Husband

would retain exclusive possession of the property until he sold it. There is nothing in the real property provision which allows Husband to unilaterally renounce his possession of the property and reimpose possession upon Wife. Barring any sale of the property to Wife, there is no provision which allows Husband to quitclaim his interest in the property to Wife. There is no provision which allows Husband to avoid his obligation to assume full financial responsibility for the real estate related expenses, except under two limited circumstances: (1) if Husband sells the property, or (2) if Wife fails to cooperate to facilitate the sale of the property. Specifically, we agree with the trial court's conclusion that "[t]he separation agreement does not describe any event that would cause [Husband] to lose his 'exclusive possession' of the marital residence until he sells it."

{¶15} This Court concludes that the parties' separation agreement as it relates to the meaning and ramifications of the term "possession" of the marital home is not ambiguous. By the plain language of the agreement, and considering that Husband had not sold the property, he remained in exclusive possession of the property, notwithstanding that he moved out of the home and executed a quit claim deed to Wife. Accordingly, the trial court did not err by finding that the parties' agreement is not ambiguous and that Husband did not lose exclusive possession of the marital property. Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE LOWER COURT ERRED IN ITS JUDGMENT ENTRY OF OCTOBER 2, 2012 IN FAILING TO FIND THAT [WIFE] HAD FAILED TO COOPERATE IN THE SALE OF THE PROPERTY WHEN THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTED SUCH A CONCLUSION.

{¶16} Husband argues that the trial court's finding that Wife cooperated in the sale of the marital home was against the manifest weight of the evidence. This Court disagrees.

**{¶17}** In determining whether the trial court's decision is or is not supported by the manifest weight of the evidence, this Court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978) syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The Ohio Supreme Court has clarified that:

> when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). This presumption arises because the trial judge had the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* at 80. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.* at 81.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

**{¶18}** This Court reiterates the relevant provision of the parties' agreement:

> Husband will sell the property at a time of his choosing. Wife stipulates there is no marital equity in the property as of execution of this agreement. Upon notifying Wife of his intention to sell the real estate, Wife shall cooperate to facilitate the sale including, but not limited to, providing the escrow agent a quit claim deed conveying her interest in the property to Husband or to a purchaser. All net proceeds of sale shall be payable to Husband and shall be Husband's separate property. In the event Wife fails to cooperate in this regard, Husband shall no longer be responsible for real estate related expenses.

**{¶19}** As an initial matter, this Court concludes that the provision requiring Wife to cooperate with regard to the sale of the home is not ambiguous. The parties do not dispute this. To cooperate means "to act or work with another or others; to associate with another or others for mutual benefit." *Merriam-Webster's Collegiate Dictionary* 275 (11th Ed.2003).

Accordingly, cooperation is a two-way street designed to arrive at a place that benefits both parties, not merely one party at any cost to the other.

{¶20} Both Husband and Wife agreed that both executed the original listing agreement to sell the house for $119,900.00 upon Husband's decision to sell. There is no dispute that both Husband and Wife executed an amendment to the listing agreement approximately five weeks later, reducing the listing price to $109,000.00. Both parties further agreed that there were never any offers on the house. The realtor testified that there were only three showings of the home at the initial price, and none at the reduced price. The realtor testified that she presented options to the parties when no buyers expressed any interest, including the option for a short sale. The parties agreed that a short sale involved selling the home for less than what was owed to the lender on the mortgage. Wife testified that she spoke with the lender to determine whether it was possible to participate in a short sale without damaging her credit. Based on the lender's response, Wife continued to pay the mortgage to protect her credit.

{¶21} Wife testified that Husband never pursued a short sale of the property. Instead, Wife and Husband merely discussed the option. The realtor confirmed that the option of a short sale was only one of various options discussed. In addition, Wife testified that neither Husband nor the realtor ever approached her with an offer that would have necessitated a short sale. Nor was Wife ever presented with documentation for her execution which would authorize lowering the listing price below the amount owed on the mortgage.

{¶22} Wife conceded that she refused to consider a short sale under the circumstances because it would damage her credit. In arguing that she did not fail to cooperate to facilitate the sale of the home, Wife relied on section 9 of the parties' separation agreement which provides, in relevant part: "Neither Husband nor Wife shall hereafter incur any debts or obligations upon the

credit of the other and each shall indemnify and save the other absolutely harmless of any debt or obligation so charged or otherwise incurred." Specific to Husband, section 9 further provides:

> Husband agrees to assume and be solely responsible for the following debts and indemnify and hold Wife absolutely harmless thereon:
>
> The debts which Husband has agreed to assume hereunder;
>
> The debts which Husband has incurred in his name.

{¶23} While Wife conceded that Husband did not incur any new debt in her name, she testified that acquiescing to a short sale that would have a negative impact on her credit, or compel her to make up the difference between the sale price and the $103,000.00 balance owing on the mortgage, would have the same effect as imposing additional financial obligations on her.

{¶24} The trial court found that Wife did not fail to cooperate with regard to the sale of the property. The trial court based its finding on evidence that Wife had met with the realtor and agreed to a price reduction in the listing price. In addition, the trial court noted that there have never been any offers to buy the home. Therefore, Wife did not refuse to consent to a potential sale.

{¶25} This Court concludes that the trial court's finding that Wife did not fail to cooperate with regard to the sale of the property was not against the manifest weight of the evidence. Based on our review, there was competent, credible evidence to establish that Wife cooperated to facilitate the sale of the home. Wife met with the realtor and executed the original and amended listing agreements. Wife refused to pursue the option of reducing the asking price to a point that would result in a short sale because it would negatively affect her credit. Husband did not present any evidence that he would make up the difference between the sale price and the amount owed on the mortgage so as to preserve Wife's credit and hold her harmless on the mortgage. Wife continued to pay all real estate related expenses, including the mortgage, taxes,

insurance, and maintenance, all of which helped to increase equity in the home and/or maintain the curb appeal of the home. Certainly, the listing price does not prevent a potential buyer from offering substantially less than that price. However, the parties agree that there have never been any offers on the home at any price. Accordingly, there was no evidence that Wife rejected any offers to purchase the home or otherwise failed to cooperate with regard to the sale of the marital home. Therefore, the trial court's finding was not against the manifest weight of the evidence. Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE LOWER COURT ERRED IN FINDING [HUSBAND] IN CONTEMPT IN ITS JUDGMENT ENTRY OF OCTOBER 2, 2012.

{¶26} Husband's entire argument relating to this assignment of error is as follows: "Based upon the errors set forth in Assignments of Error No. I and II above, the lower court erred in finding Husband in contempt." This Court disagrees.

{¶27} Based on this Court's resolution of the first and second assignments of error, we conclude that the trial court did not err by finding Husband in contempt. To the extent that Husband is arguing that the trial court's finding of contempt was against the manifest weight of the evidence, we disagree. The manifest weight standard of review is enunciated above. Moreover, we will not here reiterate our discussion relative to Wife's cooperation in the sale of the home.

{¶28} In addition, we conclude that the trial court's finding that Husband retained exclusive possession of the home and maintained an obligation to pay all real estate related expenses was not against the manifest weight of the evidence. Husband admitted continuing to pay all expenses for several months after he physically vacated the home. The trial court found Husband's statement that he continued paying such expenses merely as a show of good faith not

credible. As the trier of fact is in the best position to assess matters of credibility, this Court is loath to disturb those determinations on appeal. *Wilson, supra*, at ¶ 24; *State v. Higgins*, 9th Dist. Summit No. 23271, 2007-Ohio-1261, ¶ 22. Husband executed a quit claim deed of his interest in the property to Wife without her knowledge. He stopped paying property-related expenses at that time. We agree with the trial court that Husband attempted to circumvent the plain language of the parties' agreement and, further, attempted to unilaterally modify the terms of the parties' agreed property division. The weight of the evidence demonstrated that Husband retained an obligation to pay all marital property-related expenses until he either sold the property or Wife failed to cooperate in the sale of the home. Neither contingency had occurred when Husband ceased paying the property expenses. Accordingly, the trial court did not err by finding Husband in contempt. Husband's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE LOWER COURT IN ITS JUDGMENT ENTRY OF OCTOBER 2, 2012 ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR IN ORDERING [HUSBAND] TO PAY ALL OF THE MORTGAGE PAYMENTS AND EXPENSES OF THE PROPERTY WITHOUT ORDERING [WIFE] TO RETURN TITLE AND POSSESSION OF THE PREMISES TO [HUSBAND].

{¶29} Husband argues that the trial court committed plain error by failing to order Wife to restore Husband's titled interest in the property upon his compliance with the trial court's order that he reimburse Wife for the money she expended for the property-related expenses. He argues that the absence of such an order would foreclose his receipt of any proceeds from the eventual sale of the home.

{¶30} A plain error is one that is "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.*, 70 Ohio

St.2d 207, 209 (1982). The Ohio Supreme Court discussed the civil plain error standard as follows:

> In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus; *see also LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 124 (1987) (stating that the plain error doctrine should be used with the utmost caution and only under exceptional circumstances to prevent a manifest miscarriage of justice).

{¶31} The parties' separation agreement does not contain any provision whereby Husband might lose his interest in the proceeds of the sale of the marital home. The parties agreed that Husband was entitled to any sale proceeds as his separate property as part of the division of marital property. Accordingly, there was no need for the trial court to issue an order that was already in effect, and the trial court did not err by failing to order Wife to restore Husband to title in the property. In the absence of any error by the trial court, there can be no plain error. Husband's fourth assignment of error is overruled.

III.

{¶32} Husband's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

—

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

KENNETH L. GIBSON, Attorney at Law, for Appellant.

MICHAEL CRETELLA, Attorney at Law, for Appellee.