[Cite as *State v. Hodges*, 2016-Ohio-5461.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 15CA0056-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JESSE D. HODGES | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 14 CR 0324 |

DECISION AND JOURNAL ENTRY

Dated: August 22, 2016

HENSAL, Judge.

{¶1} Defendant-Appellant, Jesse Hodges, appeals his convictions for robbery, kidnapping, and impersonating a peace officer from the Medina County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} This appeal involves a peculiar set of facts wherein an innocent man became the victim of Mr. Hodges's ill-conceived plan to confront the man whom he allegedly believed was contacting his wife[1] through a dating website. Mr. Hodges's plan failed and, as a result of the events described herein, he was convicted of robbery, kidnapping, and impersonating a peace officer. Mr. Hodges was subsequently sentenced to a total of five years of imprisonment.

{¶3} The record reflects that Mr. and Mrs. Hodges arranged to meet a man named John at a gas station on a Sunday evening in May 2015. John testified that he and Mrs. Hodges had

---

[1] The record reflects that Mrs. Hodges filed for divorce prior to trial.

messaged each other through a dating website over a year prior to the events giving rise to this case. Then, "out of the blue[,]" Mrs. Hodges sent John text messages[2] indicating that she wanted to meet, and was "down to get a lil freaky[.]" John was skeptical because he had not heard from Mrs. Hodges in a long time. Indeed, he shared his skepticism with Mrs. Hodges, texting that he "d[idn't] feel like getting robbed on a Sunday[.]" She responded that she was coming alone, and described her vehicle. Despite his skepticism, he drove to the designated gas station.

{¶4} After arriving at the gas station and waiting over a half-hour, John observed Mrs. Hodges's vehicle pull into the gas station followed by another vehicle. Suspicious of this additional vehicle, John texted Mrs. Hodges, indicating that he had gone to a nearby car wash and requested that she meet him there instead. John then observed the two vehicles leave the gas station together, at which point he realized this was a "[n]o go" and left.

{¶5} Around this same time, Jesse, a pharmacy student, pulled into the car wash. As Jesse was pulling up to the pay station and looking down at his wallet, he heard someone yelling "Police, stop." Jesse looked up and saw what he believed to be a state trooper pointing a real gun at his head. Unbeknownst to him at that time, what Jesse really saw was Mr. Hodges, who is not a state trooper, wearing a black hat, a fake badge hanging from a chain around his neck, and a black t-shirt with the words "Ohio State Highway Patrol" on it. Although it appeared to be real, Mr. Hodges was holding an airsoft gun with the orange tip filed down.

{¶6} Jesse immediately put his hands on the steering wheel and awaited further direction. Mr. Hodges ordered Jesse out of the vehicle and told him to put his hands on the roof of the car. Mr. Hodges then put on black gloves and frisked Jesse. At some point around this

---

[2] Mrs. Hodges testified at trial that it was Mr. Hodges, not her, that sent John text messages. The sender of the text messages, however, is irrelevant for purposes of our disposition of this appeal.

time, Mr. Hodges holstered the fake gun. The gun remained holstered throughout the remainder of the encounter. Also around this time, Mr. Hodges's scanner dropped to the ground, "exploded[,]" and the battery "shot out."

{¶7} Mr. Hodges proceeded to berate Jesse, repeatedly asking if he knew that the girl standing nearby (Mrs. Hodges) was underage. Jesse, completely unaware of what Mr. Hodges was talking about, glanced toward Mrs. Hodges and told Mr. Hodges that he had no idea who she was. Mr. Hodges then told his wife to leave.

{¶8} Mr. Hodges then asked Jesse whether he had guns in the car, to which Jesse responded that he did, and that they were unloaded and located in the trunk. Mr. Hodges began searching the trunk, eventually asking and receiving consent to do so. Jesse noted Mr. Hodges's failure to obtain consent prior to searching the trunk, but still believed Mr. Hodges was a real state trooper.

{¶9} Mr. Hodges then told Jesse that he would have to "call in" the guns. He then walked away and used his iPhone to make a call, presumably because his scanner had dropped to the ground and "exploded" earlier in the encounter. When he returned, Mr. Hodges showed Jesse what appeared to be an arrest warrant. At some point around this time, Mr. Hodges explained that this was a sting operation for an individual that had contacted an underage girl for sex. Jesse insisted that there had been a mistake, and that he was just there to wash his car.

{¶10} Jesse then asked if there was anything he could do to prove that he was not the person Mr. Hodges was looking for. Mr. Hodges said there was and took Jesse's cell phone, indicating that he was going to use it to call a number, and if Jesse's number did not match the number he had been texting, that he would know he had the wrong person. When Jesse's number cleared, Mr. Hodges acknowledged that he had the wrong person, but indicated he could

not just let Jesse go because he was illegally transporting guns. Jesse, however, knew that he was lawfully transporting the guns, and began to worry that Mr. Hodges was not a real state trooper and that he was being robbed. Jesse testified that he did not question Mr. Hodges's credentials because he "wanted [Mr. Hodges] to feel like he was in control of the situation[]" and did not want Mr. Hodges to "just get hot-headed and shoot [him.]"

{¶11} Mr. Hodges then gave Jesse two options: (1) he could pay a $50.00 "stop fee"; or (2) he could receive a citation, which he could dispute in court, but would require Mr. Hodges to confiscate his guns. Still questioning whether Mr. Hodges was a real state trooper – and worried about the impact a citation could have on his career – Jesse opted to pay $50.00 in cash. Mr. Hodges took the money, wished Jesse luck in pharmacy school, and left. Jesse then washed his car and went home.

{¶12} Soon after arriving home, Jesse received a call from a blocked number but recognized Mr. Hodges's voice. Mr. Hodges asked Jesse if he had been stopped by any additional law enforcement on his way home, or if he had any questions. Jesse indicated that he had not been stopped, and that he did not have any questions. Jesse did, however, ask for Mr. Hodges's phone number, which Mr. Hodges declined to give and hung up.

{¶13} Jesse then contacted two of his friends who are police officers and explained what had happened. One of his friends confirmed Jesse's suspicions that this was not a legitimate encounter with law enforcement, and suggested that he contact the police. Jesse did so, and the police used Jesse's call history (which contained the number that Mr. Hodges called during the encounter) and surveillance video from the car wash to identify Mr. Hodges. Police obtained a warrant to search Mr. Hodges's home and located the fake gun, fake badge, holster, and scanner.

Police then received Mr. Hodges's consent to search his vehicle and found the iPhone, black hat, black t-shirt with the words "Ohio State Highway Patrol" on it, and black gloves.

{¶14} A grand jury indicted Mr. Hodges on counts for: (1) aggravated robbery in violation of Revised Code Section 2911.01(A)(1); (2) robbery in violation of Section 2911.02(A)(2); (3) kidnapping in violation of Section 2905.01(A)(2); and (4) impersonating a peace officer in violation of Section 2921.51(E). Mr. Hodges waived his right to a jury, and the case proceeded to a bench trial.

{¶15} At trial, the trial court dismissed the aggravated burglary charge, but ultimately found Mr. Hodges guilty of the remaining offenses and sentenced him to a total of five years of incarceration. Mr. Hodges now appeals, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF THE CHARGE OF ROBBERY BECAUSE THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} In his first assignment of error, Mr. Hodges argues that his conviction for robbery is against the manifest weight of the evidence. Specifically, he argues that the State did not establish that he inflicted, attempted to inflict, or threatened to inflict physical harm during the commission of the theft offense. Thus, while captioned as a challenge to the manifest weight of the evidence, Mr. Hodges's argument sounds in sufficiency, and we will analyze it accordingly. *State v. Wesemann*, 9th Dist. Summit No. 25908, 2012-Ohio-247, ¶ 9.

{¶17} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶18}** The trial court found Mr. Hodges guilty of robbery under Section 2911.02(A), which provides that "[n]o person, in attempting or committing a theft offense * * * shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another[.]" The crux of Mr. Hodges's argument is that the evidence supported a finding of theft by deception, not robbery. In this regard, Mr. Hodges argues that Jesse gave him $50.00 because Jesse thought he was paying a "stop fee" to a state trooper, not because Mr. Hodges inflicted or attempted to inflict physical harm upon him. The State, on the other hand, argues that at the time Jesse gave Mr. Hodges $50.00, he was suspicious of whether Mr. Hodges was a state trooper, but gave him the money in light of the fact the Mr. Hodges had a gun. Thus, the State argues, the evidence indicated that Jesse gave Mr. Hodges the money as a result of an implied threat of physical harm.

**{¶19}** Addressing implied threats of physical harm, the Ohio Supreme Court has held that "the threat of physical harm need not be explicit; rather, an implied threat of physical harm is sufficient to support a conviction under R.C. 2911.02(A)(2)." *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 23, quoting *State v. Harris*, 10th Dist. Franklin No. 07AP-137, 2008-Ohio-27, ¶ 14. In reaching this conclusion, the Court stated that:

One cannot display, brandish, indicate possession of, or use a deadly weapon in the context of committing a theft offense without conveying an implied threat to inflict physical harm. *It is the very act of displaying, brandishing, indicating possession, or using the weapon that constitutes the threat to inflict harm because it intimidates the victim into complying with the command to relinquish property without consent.*

(Emphasis added.) *Id.*

**{¶20}** Despite Mr. Hodges's arguments, the record reflects that Jesse became suspicious of whether Mr. Hodges was a real state trooper, but continued to comply with his requests because he believed Mr. Hodges had a real gun. Specifically, Jesse testified as follows:

> [A]t this point I was starting to get worried it wasn't really a police officer and I was being robbed, so I wanted him to feel like he was in control of the situation. So obviously, he has a gun so I didn't want * * * to question him too much for a badge number, for his card, or for his credentials and him just get hot-headed and shoot me or anything.

Relatedly, when asked why he did not confront Mr. Hodges about his suspicions, Jesse testified that he "wanted to, but [Mr. Hodges] had a gun, so [he] didn't feel like [he] was free to leave without something." Viewing this evidence in a light most favorable to the prosecution, the trial court could have reasonably inferred that Mr. Hodges's possession of the fake gun constituted an implied threat of physical harm, which intimidated Jesse into giving Mr. Hodges $50.00. *Evans* at ¶ 23. Thus, a rational trier of fact could have found the essential elements of robbery proven beyond a reasonable doubt. As such, Mr. Hodges's argument lacks merit.

**{¶21}** To the extent that Mr. Hodges's argument can be construed as challenging the manifest weight of the evidence, Mr. Hodges did not testify at trial and presented no witnesses on his behalf. Given the State's evidence, we cannot say that this is the exceptional case where the evidence weighs heavily in favor of Mr. Hodges, warranting reversal. *State v. Higgins*, 9th Dist. Summit No. 23271, 2007-Ohio-1261, ¶ 23. Mr. Hodges's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PERMITTED THE TESTIMONY OF CHRISTINA HODGES, WIFE OF APPELLANT.

**{¶22}** In his second assignment of error, Mr. Hodges argues that the trial court committed plain error when it permitted his wife to testify against him without first obtaining a waiver of her right to not testify. We, however, need not address the merits of whether the trial court erred by permitting Mr. Hodges's wife to testify because he has failed to demonstrate that the alleged error affected the outcome of trial.

**{¶23}** As the Ohio Supreme Court has stated, "[a]n appellate court may not reverse a conviction for plain error based on the admission of spousal testimony * * * unless it conducts a plain-error analysis * * *, and determines that but for the error in admitting the spouse's testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice." *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, syllabus. The doctrine of plain error requires that there must be: (1) a deviation from a legal rule; (2) that is obvious, and; (3) that affects the appellant's substantial rights. *State v. Hardges*, 9th Dist. Summit No. 24175, 2008–Ohio–5567, ¶ 9. An error affects the appellant's substantial rights if it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶24}** As previously noted, Mr. Hodges told his wife to leave soon after he confronted Jesse, and she complied. Thus, her testimony at trial focused on the events that occurred before and after Mr. Hodges's encounter with Jesse. Jesse, on the other hand, testified in detail as to the events that took place. Additionally, a police officer who was involved in the investigation testified as to the surveillance video obtained, and the items recovered from Mr. Hodges's house and vehicle. The police officer also testified that Mr. Hodges admitted to having the fake gun,

frisking Jesse, searching his car, showing him a document that Jesse thought was an arrest warrant, and wearing the "Ohio State Highway Patrol" t-shirt. According to the officer, Mr. Hodges also admitted that he wanted to make the encounter appear to be a sting operation. Thus, we cannot say that but for the admission Mrs. Hodges's limited testimony, the outcome of the trial would have been different. Mr. Hodges's second assignment of error is overruled.

### III.

**{¶25}** Mr. Hodges's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

CONRAD G. OLSON, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.