[Cite as *Lundin v. Niepsuj*, 2014-Ohio-1212.]

**IN THE COURT OF APPEALS**

**NINTH APPELLATE DISTRICT**

**SUMMIT COUNTY, OHIO**

| | | |
|---|---|---|
| BARBARA LUNDIN, a.k.a. NIEPSUJ, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 26015** |
| VINCENT NIEPSUJ, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Court of Common Pleas, Domestic Relations Division.
Case No. DR 2011 04 0968.

Judgment: Affirmed.

*Vincent Niepsuj,* pro se, 400 West Avenue, Suite A1, Buffalo, NY 14224 (Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Vincent Niepsuj, appeals the domestic violence civil protection order issued by the Summit County Court of Common Pleas, Domestic Relations Division, on June 2, 2011. The order restrained appellant from having contact with his ex-wife, Barbara Lundin a.k.a. Niepsuj (appellee herein), and their three children. For the following reasons, we affirm the judgment of the trial court.

{¶2} On April 4, 2011, appellee filed a petition in the domestic relations court for a domestic violence civil protection order under R.C. 3113.31. The trial court issued an ex-parte temporary civil protection order and set the matter for hearing pursuant to

R.C. 3113.31(D). A full hearing was held on April 13, 2011. Appellee appeared pro se; appellant was represented by counsel. The magistrate heard the testimony of appellant, appellee, and several witnesses on appellee's behalf.

{¶3} On June 2, 2011, the domestic relations court issued a domestic violence civil protection order utilizing the form prescribed in Sup.R. 10.01. Form 10.01-I was signed by the magistrate and approved by the trial judge on the same date.

{¶4} On June 13, 2011, appellant filed a motion for relief from judgment, pursuant to Civ.R. 60(B), from the Form 10.01-I order. Appellant filed timely objections to this domestic violence civil protection order on June 16, 2011. Appellant also filed objections to the ex parte civil protection order, which had been replaced by the subsequent domestic violence civil protection order.

{¶5} On July 5, 2011, appellant filed a notice of appeal in this court. On July 8, 2011, this court issued a show cause order stating more information was needed concerning whether there was a final, appealable order. This order also instructed appellant to either provide this court with the trial court's ruling on his objections or, if the trial court had not ruled on the objections, to move this court to remand the matter for the trial court to rule on the objections. As the trial court had not ruled on his objections or his motion for relief from judgment, appellant filed a motion requesting, as an option, that the matter be remanded "so that jurisdiction is vested back with the Domestic Relations court * * *." On September 16, 2011, this court granted the motion, and the appeal was stayed.

{¶6} The trial court independently reviewed the facts and issued a judgment entry on October 19, 2012. The trial court overruled appellant's objections to the

2

current domestic violence civil protection order and denied the Civ.R. 60(B) motion for relief from judgment. The trial court further found that appellant's objections to the ex-parte civil protection order were untimely and that he had failed to support his objections with a transcript of those proceedings. Therefore, appellant's objections to the ex parte order were overruled.

{¶7} On November 19, 2012, appellant filed a "renewed" notice of appeal, which we treated as a request to amend the original notice of appeal to include an appeal from the trial court's order ruling on appellant's objections. That request was granted. Therefore, before this court for review are both the June 2, 2011 original order of protection and the trial court's order of October 19, 2012. Appellee did not file a brief in this matter.

{¶8} Appellant's sole assignment of error states:

> The trial court erred **as a matter of law** by issuing **any** length Order of Protection against Appellant Vincent without satisfying **any** essential element of O.R.C. 3113.31(A), for **any** of the four unique protected parties, to wit: Barbara the Appellee, S. (now 18), A (16) and T (13). [Emphasis sic.]

{¶9} We first address the appropriate standard of review of a civil protection order. The decision whether to issue a civil protection order pursuant to R.C. 3113.31 lies within the sound discretion of the trial court. *Hoyt v. Heindell*, 191 Ohio App.3d 373, 2010-Ohio-6058, ¶39 (11th Dist.). The trial court also has broad discretion to determine the appropriate scope of a civil protection order. R.C. 3113.31(E)(1) ("the court may grant any protection order * * * [t]he order * * * may" include those provisions contained in (E)(1)(a)-(h)).

3

**{¶10}** However, when the trial court exercises its discretion to grant an R.C. 3113.31 petition, the trial court must find that the petitioner has shown by a preponderance of the evidence that he or she is the victim of, or in danger of, domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 42 (1997).

> Consequently, as in other civil cases, we review the evidence underlying protection orders to determine whether sufficient evidence was presented or whether the protection order is against the manifest weight of the evidence. With respect to the scope of a protection order, however, we consider whether the trial court abused its discretion.

*A.S. v. P.F.*, 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶4 (citations omitted). Therefore, a reviewing court must look to the nature of the challenge to the civil protection order in determining the appropriate standard of review.

**{¶11}** In his sole assignment of error, appellant argues the trial court erred in issuing the domestic violence civil protection order because the finding that appellant knowingly engaged in a pattern of conduct that caused mental distress to appellee and their children was against the manifest weight of the evidence. We therefore review whether it was against the manifest weight of the evidence for the trial court to find that petitioner's claim was established by a preponderance of the evidence.

**{¶12}** In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2129, ¶17, the Ohio Supreme Court held that the "criminal" manifest weight standard announced in *State v. Thompkins*, 78 Ohio St.3d 380 (1997) also applies to manifest weight challenges in civil cases. Therefore, we sit as a "thirteenth juror" and review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact "'clearly lost its way and created a manifest injustice[.]'" *Id.* at 546-47, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st

4

Dist.1983). In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶21.

{¶13} In this case, the trial court determined that appellee was entitled to a civil protection order because she proved by a preponderance of the evidence that appellant had engaged in a pattern of conduct by which appellant knowingly caused appellee and the children mental distress. The trial court's order of June 2, 2011, restrains appellant from having contact with appellee and their children until April 13, 2016, and contains the following findings of fact:

> The parties are divorced, and have had a high conflict case concerning their children. Between 12/2010 and 4/2011, Respondent has engaged in a pattern of conduct causing Petitioner and the children severe emotional trauma. The parties had a physically abusive relationship while they were married.
>
> The Court further finds by a preponderance of the evidence: 1) that the Petitioner or Petitioner's family or household member(s) are in danger of or have been a victim of domestic violence or sexually oriented offenses as defined in R.C. 3113.31(A) committed by Respondent; and 2) the following orders are equitable, fair, and necessary to protect the persons named in this Order from domestic violence.

{¶14} Appellant argues the trial court's findings that appellant and appellee had a high-conflict divorce case and a physically abusive relationship were not supported by the record. Appellant further argues he did not have knowledge that his "entirely innocent" conduct would cause mental distress to appellee and their children and that, in fact, it did not cause such distress.

{¶15} A high-conflict case is not an element required for the issuance of a protection order. *See* R.C. 3113.31. Similarly, a protection order may issue without a finding that physical abuse has occurred. *Id.* Thus, although the trial court's findings on

5

these issues are supported by the record, we need not address them. Instead, this court focuses on whether the trial court clearly lost its way in determining that appellant engaged in a pattern of conduct whereby he knowingly caused appellee and their children emotional distress. *See Thompkins*, *supra*.

{¶16} R.C. 2903.211(A)(1) defines menacing by stalking: "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." When committed against a family member, an act of menacing by stalking is "domestic violence." R.C. 3113.31(A)(1)(b). A person's ex-spouse and children are family members. R.C. 3113.31(A)(3).

{¶17} "'[S]talkers engage in psychological warfare, which by its nature is devious, insidious, and subtle.'" *State v. Werfel*, 11th Dist. Lake No. 2006-L-163, 2007-Ohio-5198, ¶34, quoting *Paulus v. Rucker*, 11th Dist. Portage No. 2002-P-0080, 2003-Ohio-2816, ¶35 (Christley, J., concurring). Accordingly, in considering stalking allegations, the totality of the alleged offender's conduct must be considered even if certain instances of conduct, in isolation, appear non-threatening. *Tuuri v. Snyder*, 11th Dist. Geauga No. 2002-G-2107, 2002 Ohio App. LEXIS 2060, *9 (Apr. 30, 2002), citing *Still v. Still*, 2d Dist. No. 17416, 1999 Ohio App. LEXIS 1808, *5 (Apr. 23, 1999). A pattern of conduct is "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). The statute does not define "closely related in time." "Consequently, whether the incidents are 'closely related in time' is to be resolved by the trier of fact, 'considering the evidence in the context of all the circumstances in the case.'" *Cooper*

6

*v. Manta*, 11th Dist. Lake No. 2011-L-035, 2012-Ohio-867, ¶39, quoting *State v. Bone*, 10th Dist. Franklin No. 05AP-565, 2006-Ohio-3809, ¶24.

**{¶18}** A person acts "knowingly" with respect to his or her conduct when, regardless of purpose, he or she "is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶19}** Actual threats, physical harm, or mental distress are sufficient, but not necessary, elements of menacing by stalking. The perpetrator's knowledge that his pattern of conduct would cause the victim to fear such harm is sufficient. *Turri*, *supra*, *9-10, citing *State v. Smith*, 126 Ohio App.3d 193, 202 (7th Dist.1998). *See also Holloway v. Parker*, 3rd Dist. Marion No. 0-12-50, 2013-Ohio-1940, ¶23, fn. 5; *Mullen v. Hobbs*, 1st Dist. Hamilton No. C-120362, 2012-Ohio-6098, ¶30-39 (Cunningham J., concurring in judgment only); *R.C. v. J.G.*, *supra*, ¶9. "Mental distress" is defined as any mental condition that involves temporary, substantial incapacity or that normally requires mental health services, whether or not such services were sought. R.C. 2903.211(D)(2).

**{¶20}** At the April 13, 2011 hearing, the testimony of appellee, her minister, and her children's youth group leader established that, over a period of several months immediately prior to appellee's petition for a domestic violence civil protection order, appellant sought out persons who may know appellee and their children, including church ministers, congregants, youth group leaders, youth group members, teachers, parents, coaches, teammates, and psychological counselors. Appellant attempted to acquire information concerning the habits, routines, and/or religious beliefs of appellee and the children. Appellant made numerous phone calls to church personnel seeking

7

information about his children and church beliefs. Appellant explored the area where appellee and the children lived looking for their home, their church, their youth group camp, and anyone he could talk to about them. Appellant rejected numerous suggestions that he speak with his children directly, even though there was no order restraining appellant from contacting his children during this time. One counselor stopped providing services to appellee and the children because appellant would show up uninvited at her office and stay all day with a book, a behavior that disturbed the counselor and her clients.

{¶21} Appellant did not deny he engaged in the conduct described by the other witnesses, but tried to explain it and repeatedly stated that it was not violent or threatening conduct. Appellant testified he did these things in order to gain a better understanding of his children's life. He also indicated that he wanted to know why his children had not been available for scheduled Skype video chat sessions, which had been a part of the previous order. Appellant argues strenuously that his conduct was "entirely innocent" with "good motive" and that there is simply no way he could have known that his conduct would cause anyone mental distress.

{¶22} However, it is important to analyze his conduct, as the trial court did in ruling on appellant's objections, in the context of the parties' previous history. Appellant was previously subject to a protection order issued in November 2001. That order was extended to February 6, 2011. Appellee testified that these orders were issued because appellant had been verbally and physically abusive during their marriage. According to appellee, appellant would scream at her for hours without provocation; had kicked a box of curtains at her; punched through a cupboard door; kicked in a bedroom

8

door where she had locked herself in; jumped over a banister to scream at her; and slapped things out of her hands to get her attention.

{¶23} Appellant did not deny these events occurred, but testified that he had forced the bedroom door open with his arm and that he was merely "venting" when he punched the cupboard and kicked the curtains. Appellant acknowledged that he sent a letter to appellee using another person's return address because it would likely have been rejected if he were the identified sender. Appellant refused to comment on whether he understood his actions might be upsetting and denied that he had also upset those who testified in the very same hearing that appellant's actions were upsetting. Thus, the trial court did not lose its way in determining that appellant "was aware that his conduct would probably cause" mental distress to appellee and their children. R.C. 2901.22(B).

{¶24} Appellant similarly argues that the trial court's finding that his conduct in fact caused mental distress to appellee and his children was not supported by the evidence. However, appellee testified appellant's behavior upset the children, caused her great anxiety, and was among the reasons she and the children attended counseling. Appellee testified that appellant's conduct was socially isolating the children. Appellee further testified to her belief that the situation was escalating, thereby acknowledging her fears for the future. Thus, the trial court had before it evidence that appellee and the children experienced mental distress; and the trial court did not lose its way in finding that appellant had caused this distress.

{¶25} Under these circumstances, the trial court's determination that a protection order should issue due to appellant having engaged in a pattern of conduct that caused

9

mental distress to appellee and their children was not against the manifest weight of the evidence.

{¶26} Appellant's assignment of error is without merit. The judgment of the trial court is affirmed.

{¶27} We order that a special mandate issue out of this Court, directing the Court of Common Pleas, Domestic Relations Division, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

{¶28} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

{¶29} Costs taxed to appellant.

_____
PRESIDING JUDGE TIMOTHY P. CANNON
Eleventh Appellate District,
Sitting by Assignment.

JOSEPH J. VUKOVICH, J.,
Seventh Appellate District,
Sitting by Assignment,

CYNTHIA WESTCOTT RICE, J.,
Eleventh Appellate District,
Sitting by Assignment,

concur.