[Cite as *F.-S. v. Pacek*, 2015-Ohio-4310.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

DIANA F.-S.

    Appellee

    v.

DAN PACEK

    Appellant

C.A. No.      14CA0108-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.      14DV0196

DECISION AND JOURNAL ENTRY

Dated: October 19, 2015

---

WHITMORE, Presiding Judge.

{¶1}   Appellant, Dan Pacek, appeals from the order of the Medina County Court of Common Pleas, Domestic Relations Division, granting Appellee, Diana F.-S., a Domestic Violence Civil Protection Order ("CPO").  We affirm in part and reverse in part.

I

{¶2}   Ms. F.-S. petitioned the court for a CPO against Mr. Pacek. The court granted Ms. F.-S. an ex-parte protection order and set the matter for full hearing in front of the magistrate.

{¶3}   After the hearing, the magistrate granted Ms. F.-S. a CPO effective for five years. The trial court approved and adopted the CPO by signing a separate line on the same document. The court found that:

> The parties are family/household members pursuant to ORC 3113.31(A)(3) in that they lived as if married within five years of the filing of the petition. [Ms. F.-S.] and her witness presented the most credible testimony.  Although [Mr. Pacek's] witnesses testified that he was generally a nice guy, all parties and the

witnesses testified to the fact that the parties' relationship was toxic and unhealthy. [Ms. F.-S.] testified that each time she tried to end the relationship, circumstances would escalate to [Mr. Pacek] stalking, excessive calling and even physical violence. Therefore, [Mr. Pacek] engaged in a pattern of conduct knowingly causing [Ms. F.-S.] to believe that he would cause her physical harm and such has caused mental distress. The [c]ourt further finds by a preponderance of the evidence: 1) that [Ms. F.-S.] or [Ms. F.-S.'s] family or household members are in danger of or have been a victim of domestic violence or sexually oriented offenses as defined in R.C. 3113.31(A) committed by [Mr. Pacek]; and 2) the following orders are equitable, fair, and necessary to protect the persons named in this Order from domestic violence.

{¶4} Mr. Pacek did not file objections to the CPO in the trial court. Instead, he appealed from the trial court judgment. He raises two assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN GRANTING THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER BECAUSE THE ISSUANCE OF THE PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT HEARING.

{¶5} In his first assignment of error, Mr. Pacek argues that the trial court judgment was against the manifest weight of the evidence. We disagree.

{¶6} To issue a CPO, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton,* 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. R.C. 3113.31 defines "[d]omestic violence" to include "[a]ttempting to cause or recklessly causing bodily injury" and "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation [of sections of the Revised Code addressing menacing by stalking and aggravated trespass]." R.C. 3113.31(A)(1)(a), (b).

**{¶7}** "[T]he civil manifest weight of the evidence standard of review * * * mirrors the criminal standard." *Pelmar USA, LLC v. Mach. Exchange Corp.*, 9th Dist. Summit No. 25947, 2012-Ohio-3787, ¶ 10. The appellate court thus sits as a "thirteenth juror" to review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact "clearly lost its way and created a manifest miscarriage of justice." *J.K. v. M.K.*, 9th Dist. Medina No. 13CA0085-M, 2015-Ohio-434, ¶ 19. "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings." *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212, ¶ 12. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against [the judgment]." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶8}** In this case, there was evidence presented at the hearing that the parties had been in an on-and-off relationship for approximately three years. Both parties, and all of the witnesses that testified, admitted that the relationship was often contentious. In many other respects, the parties' testimony conflicted.

**{¶9}** Ms. F.-S. testified that Mr. Pacek would not leave her alone, and was emotionally abusive. She testified that Mr. Pacek called and texted her over and over again within short periods of time, even after she attempted to block his number. Ms. F.-S. stated that Mr. Pacek threatened that she would "live a horrible life" if she didn't call him. According to Ms. F.-S., Mr. Pacek threatened to post on social media that she had an abortion "if [she did] not call him back within 40 seconds." Indeed, Mr. Pacek admitted to posting that Ms. F.-S. had an abortion

after the court issued the ex parte CPO. Ms. F.-S. further testified that Mr. Pacek contacted one of her coworkers, repeatedly knocked on her back window, slept outside her back window numerous times, slept in a truck in her driveway, and refused to leave her residence when asked. Ms. F.-S. also said that Mr. Pacek followed her to a public establishment and humiliated her in front of the other patrons, by announcing publicly things like "[her private parts] stunk."

{¶10} Ms. F.-S. further testified that Mr. Pacek was physically abusive. She testified regarding one incident when she tried to end the relationship and Mr. Pacek "pushed [her] around [her] kitchen, [her] living room. He put his hands around [her] neck and in front of [her] child, told [her] that he was going to tell everybody that [she had] * * * unclean [private parts] * * * in front of [her] kid." Ms. F.-S. testified about another incident when "[Mr. Pacek] pushed [her] against [her] closet door, threw [her] head back * * * and then he also threw [her] from one end of [her] hallway down to the end of the hallway * * *."

{¶11} Mr. Pacek denied harassing or abusing Ms. F.-S.. He testified that his repeated phone calls and texts to Ms. F.-S. were not to harass her, but rather were to find out what he had done to anger her. Mr. Pacek testified that he knocked on Ms. F.-S.'s windows because "she'd either get drunk and be on pills and be passed out" and he was "worried about her safety." Mr. Pacek denied any physical abuse. He denied placing his hands around Ms. F.-S.'s neck. He also denied pushing her or throwing her down the hallway, claiming instead that he "[held] her against the wall because she [was] kicking [and] screaming." He claims that she fell down without being pushed.

{¶12} Because the trial court was presented with conflicting testimony in this matter, its decision was based in significant part upon a determination of the parties' credibility. The trial court specifically found that "[Ms. F.-S.] and her witness presented the most credible testimony."

Unlike the trial court, we did not have the benefit of hearing the parties testify firsthand. Because the trial court "[a]s the trier of fact is in the best position to assess matters of credibility, this Court is loath to disturb those determinations on appeal." *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009-M, 2014-Ohio-2002, ¶ 28. Having reviewed the entire record, we cannot conclude that the trial court lost its way and created such a manifest injustice as to require reversal.

{¶13} Thus, the trial court's finding that Ms. F.-S. was "in danger of or [had] been a victim of domestic violence," and its decision to grant the CPO, were not against the manifest weight of the evidence. Mr. Pacek's first assignment of error is overruled.

### Assignment of Error Number Two

THE TRIAL COURT ERRED IN EXPANDING THE SCOPE OF THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER TO PRECLUDE APPELLANT FROM DRINKING ALCOHOL.

{¶14} In his second assignment of error, Mr. Pacek argues that it was an abuse of discretion to bar him from consuming alcohol for five years as part of the CPO. Under these circumstances, we agree.

{¶15} "[T]he trial court has discretion in establishing the scope of a protection order, and that judgment ought not be disturbed absent an abuse of discretion." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 15, quoting *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, ¶ 9 (8th Dist.). Under this standard, we determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶16} R.C. 3113.31(E)(1)(h) permits courts to add restrictions to a CPO, provided that the additional restrictions are "equitable and fair." To fulfill this requirement, "restrictions [in a

CPO] must bear a sufficient nexus to the conduct that the trial court is attempting to prevent." *Boals v. Miller*, 5th Dist. Ashland No. 10-COA-039, 2011-Ohio-1470, ¶ 37, quoting *Maag v. Maag*, 3d Dist. Wyandot No. 16-01-16, 2002 WL 468585, *3 (March 28, 2002). "In analyzing whether a sufficient nexus exists to warrant the prohibition of the conduct, the courts look to the evidence in the record to find competent, credible evidence of the conduct the trial court is attempting to prevent." *Boals* at ¶ 38; *see Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080, ¶ 19 (9th Dist.) (upholding a firearms prohibition in a CPO when evidence showed that husband had threatened to "blow * * * away" an individual associated with petitioner).

{¶17} Here, there is no evidence on the record that alcohol use or abuse by Mr. Pacek contributed to the conflict between the parties. Indeed, the testimony at the hearing regarding substance abuse related to Ms. F.-S.'s alleged behavior, not Mr. Pacek's conduct. While it undoubtedly is correct to assume that alcohol use has the potential to contribute to conflict and the exercise of poor judgment, "we must look to the evidence to determine whether there is a sufficient nexus to the conduct to be prevented and the proposed restriction." *Boals* at ¶ 40. Because there is no evidence on this record that there is a connection between alcohol use and Mr. Pacek's behavior, we find that the trial court abused its discretion in imposing the restriction. Accordingly, Mr. Pacek's second assignment of error is sustained.

III

{¶18} Mr. Pacek's first assignment of error is overruled, and his second assignment of error is sustained. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed in part. This matter is remanded for further proceedings consistent with this order.

Judgment affirmed in part,
reversed in part,

and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

TIMOTHY J. MURRAY, Attorney at Law, for Appellant.

BRUCE HALL, Attorney at Law, for Appellee.