[Cite as *R.S. v. T.S.*, 2017-Ohio-281.]

STATE OF OHIO      )
                 )ss:
COUNTY OF SUMMIT   )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

| | |
|---|---|
| T.S.<br><br>    Appellee<br><br>    v.<br><br>R.S.<br><br>    Appellant | C.A. No.    27955<br><br><br>APPEAL FROM JUDGMENT<br>ENTERED IN THE<br>COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO<br>CASE No.    2015 08 2392 |

DECISION AND JOURNAL ENTRY

Dated: January 25, 2017

CARR, Presiding Judge.

{¶1} Respondent-appellant R.S., father of petitioner T.S., appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that granted a civil protection order against him. This Court affirms in part, reverses in part, and remands.

I.

{¶2} After hearing testimony, the domestic relations court granted a protection order. The domestic violence civil protection order included an order that Father either (1) execute a power of attorney to allow Son to renew the vehicle registration on a car owned by Father but in Son's possession, or (2) sign over title of the vehicle to Son. The domestic relations court adopted the order the same day. Father filed a timely appeal and raises three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE COURT SHOULD FIND THAT THE TRIAL COURT ERRED IN GRANTING THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER BECAUSE THE ISSUANCE OF THE PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT HEARING.

**{¶3}** Father argues that the domestic relations court's issuance of a domestic violence civil protection order was against the manifest weight of the evidence. This Court disagrees.

**{¶4}** "[T]he civil manifest weight of the evidence standard of review * * * mirrors the criminal standard." *Pelmar USA, L.L.C. v. Mach. Exchange Corp.*, 9th Dist. Summit No. 25947, 2012-Ohio-3787, ¶ 10. Therefore, we sit as a "thirteenth juror" and review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact "'clearly lost its way and created a manifest miscarriage of justice * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings." *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212, ¶ 12. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." (Internal quotations and citations omitted.) *Donovan v. Donovan*, 9th Dist. Lorain No. 11CA010072, 2012-Ohio-3521, ¶ 18.

**{¶5}** "'In order to grant a [domestic violence civil protection order], the court must conclude that the petitioner has demonstrated by a preponderance of the evidence that the petitioner * * * [is] in danger of domestic violence.'" *M.K.*, 2015-Ohio-434, at ¶ 7, quoting *B.C. v. A.S.*, 9th Dist. Medina No. 13CA0020-M, 2014-Ohio-1326, ¶ 7. The only relevant section of the statute in this case defines "domestic violence" as "Placing another person by the threat of

force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code[.]" R.C. 3113.31(A)(1)(b).

{¶6}    With regard to domestic violence premised on the commission of menacing by stalking, R.C. 2903.211(A)(1) provides, in relevant part: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person[.]"

{¶7}    A "pattern of conduct" is defined, in pertinent part, as follows:

two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, * * *. [T]he posting of messages, * * * or receipt of information or data through the use of * * * an electronic method of remotely transferring information, including, but not limited to, * * * telecommunications device, may constitute a "pattern of conduct."

R.C. 2903.211(D)(1).

{¶8}    The menacing by stalking statute further defines "mental distress" as either:

(a) Any mental illness or condition that involves some temporary substantial incapacity; [or]

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2).

{¶9}    With that legal background, we now review the facts presented at the hearing to determine whether the judgment is against the weight of the evidence.

{¶10}  In February 2015, Son, then 23 years old, told his father that he was leaving home. He tried to ask about insurance information. Father, however, started yelling. Son left and it was the last time he wanted to have contact with Father.

{¶11} Father, however, attempted to contact Son; he sent dozens of text messages to him. Father learned that Son had initially moved in with Son's mother, who was separated from Father, but, after a month, Son left his mother's home. Father then started checking phone records to try to find Son. He used a program on his cellular service provider's system that he hoped would let him find Son, but it only provided a general location. With that general location, Father took to driving around that area, looking for his car and Son.

{¶12} When Son left, he used Father's car, a car that was titled in Father's name. This is the car Father searched for when driving around. In early July, the registration on the car expired. Father texted Son that he would report the car stolen and that Son would go to jail. The message also referenced "Medicare fraud." Son felt like he had to respond and texted a reply that he would return the car but he did not want Father to know his address. Father replied that he was not sure whether this was a text from Son or his son's captors and, if it was from a captor, he would find the captor and kill him. This exchange prompted Son to file a police report.

{¶13} Shortly after, Father texted Son about meeting at a Dollar General store where Son had recently shopped. Son felt like Father was stalking him. Although Father denied it, he used Son's personal information to access his bank records to, among other things, track where he shopped. Father claimed to "know everything" about Son, including his bank account number, social security number, and driver's license number.

{¶14} Father continued to act in ways that scared Son. Father sent a package to Son at his new address, an address Son did not want Father to know. Father sent the package – signed "your father, Mr. Harassment" – specifically to show Son that he knew his address. Son was afraid to open the package, so he left it in a storage room at his apartment.

{¶15} Father asserted that he was a scared parent, and that is why he sent Son 30 text messages. He also believed he "never stalked him, okay? I did drive around trying to find him."

{¶16} Son and Father agreed that there were other things Father had done over the years. Son recounted that years earlier, he rode in the backseat of a car driven by Father, who was upset about something. Father repeatedly slammed the accelerator and brakes, causing Son to bounce between the front and back seats. After doing this several times, the back seat broke, injuring Son's back. Father did not allow Son to rest so he could recover from this injury.

{¶17} This and Father's other actions over the years caused Son to fear him. For example, Father once slammed his fist into his windshield with such force that the windshield shattered. There were occasions that Father threw things and slammed things. He yelled throughout Son's life, both at his family and employees. As a result of this lifetime of experiences, Son said he now feels scared by loud voices. Son stops functioning when he is yelled at by anybody, including when Father yelled at him.

{¶18} The evidence demonstrated that Father's ongoing loud, aggressive, and intermeddling behaviors left Son incapable of functioning reasonably at times. The trial court even observed this at the hearing, noting in its findings that Son "was visibly shaking during the hearing." The evidence supported the trial court's finding by a preponderance of the evidence that Father's actions affected Son's mental condition, causing Son at least temporary substantial incapacity. Moreover, "[a]s the trier of fact is in the best position to assess matters of credibility, this Court is loath to disturb those determinations on appeal." *F.-S. v. Pacek*, 9th Dist. Medina No. 14CA0108-M, 2015-Ohio-4310, ¶ 12, quoting *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009-M, 2014-Ohio-2002, ¶ 28. After reviewing the entire record, this Court cannot conclude that the trial court lost its way and created such a manifest miscarriage of justice as to

require reversal. *See Eastley* at ¶ 20. Therefore, the trial court's protection order was not against the manifest weight of the evidence. Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THIS COURT SHOULD FIND THAT THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED RESPONDENT-APPELLANT [FATHER] TO PERMIT PETITIONER-APPELLEE [SON] TO CONTINUE TO USE HIS VEHICLE, AND WHEN IT ORDERED THAT [FATHER] SHOULD EITHER SIGN A POWER OF ATTORNEY GRANTING [SON] THE ABILITY TO RENEW THE VEHICLE'S REGISTRATION OR TO SIGN TITLE OF THE VEHICLE OVER TO [SON].

Father argues that the domestic relations court abused its discretion by ordering Father to continue to permit Son to use Father's vehicle. This Court agrees.

In addition to issuing an order of protection, the trial court may also grant any other relief to the petitioner that the court "considers equitable and fair," which may include "ordering the respondent to permit the use of a motor vehicle by the petitioner or other family or household member * * *." R.C. 3113.31(E)(1)(h). Accordingly, the trial court retains statutory authority to "craft protection orders that are tailored to the particular circumstances[.]" *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 15, citing R.C. 3113.31 and *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, ¶ 9 (8th Dist.). As this Court has recognized, the scope of a protection order lies within the sound discretion of the trial court, and that determination should not be disturbed absent an abuse of discretion. *Pacek* at ¶ 15. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

In crafting the parameters of a protection order, the "'restrictions [in a CPO] must bear a sufficient nexus to the conduct that the trial court is attempting to prevent.'" *Pacek* at ¶ 16,

quoting *Boals v. Miller*, 5th Dist. Ashland No. 10-COA-039, 2011-Ohio-1470, ¶ 37. Determination of a sufficient nexus is dependent on a finding of competent, credible evidence of the conduct the trial court seeks to prevent. *Id.*; *Boals* at ¶ 38. *See also Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080, ¶ 19 (upholding a firearms prohibition in a CPO when evidence showed that husband had threatened to "blow * * * away" an individual associated with petitioner).

In this case, Son was 23 years old and a college graduate when he moved out of his family's home, taking his father's car with him without permission. Son lived independently of his family for more than half a year before filing for a protection order. There was no evidence that Father gifted the car to his son or that Son could not obtain a vehicle of his own, given his age and independence. Moreover, Father has no duty to provide ongoing support for his competent, adult son. *See Traxler v. Traxler*, 6th Dist. Williams No. WM-03-011, 2003-Ohio-7270, ¶ 18 (recognizing both the statutory and common law duty of parents to support a child beyond the age of majority when the adult child is unable to support himself due to a mental or physical handicap). There is no evidence in the record that Son suffers from any mental or physical handicap which prevents him from supporting himself. In fact, he is a college graduate who had been supporting himself for some time before filing for a protection order.

In addition, the conduct the trial court was attempting to prevent in this case was Father's infliction of mental distress on Son. Ordering Father to either assign his titled interest in the car over to Son or otherwise forego his own use of the car bears no nexus to preventing ongoing mental distress. Based upon the evidence in the record, this Court concludes that the trial court's restrictions on Father's use of his own car exceeded the scope of reasonableness. Accordingly, the trial court abused its discretion by ordering Father to sign over title of his car to Son or grant

Son power of attorney to register the car and maintain exclusive use of the vehicle. Father's second assignment of error is sustained.

## ASSIGNMENT OF ERROR III

THIS COURT SHOULD FIND THAT THE TRIAL COURT'S ORDER VIOLATED THE CONSTITUTIONAL RIGHTS OF [FATHER] UNDER ARTICLES V AND XIV OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 19 OF THE OHIO CONSTITUTION BY ORDERING A TAKING OF HIS PERSONAL PROPERTY WITHOUT JUST COMPENSATION.

{¶19} Father argues that the domestic relations court's protection order violated his constitutional right by ordering a taking of his personal property (car) without just compensation. Based on this Court's resolution of the second assignment of error, the third assignment of error has been rendered moot and we decline to address it. *See* App.R. 12(A)(1)(c).

### III.

{¶20} Father's first assignment of error is overruled. The second assignment of error is sustained. This Court declines to address the third assignment of error. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

MOORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GEORGE G. KEITH, Attorney at Law, for Appellant.

T.S., pro se, Appellee.