[Cite as *Cappara v. Avon Lake*, 2017-Ohio-8262.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| FRANCESCA CAPPARA | C.A. No. 16CA011014 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF AVON LAKE | AVON LAKE MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. CVH 1600299 |

DECISION AND JOURNAL ENTRY

Dated: October 23, 2017

CARR, Judge.

{¶1} Plaintiff-Appellant Francesca Cappara appeals from the decision of the Avon Lake Municipal Court upholding the determination that her two dogs were nuisance dogs. This Court affirms.

I.

{¶2} On June 29, 2016, Cappara left her yard and went for a bike ride. Cappara's two dogs, a large black dog named Teddy, and a large black dog with brown coloration named Reggie, went through the electric fence and left the yard after her. The dogs ran across the street into the driveway and tree lawn area of Ashley Rufus' property. Rufus' two sons, who were 5 and 7 years old, and a 12 year old neighbor boy were playing in the yard and Rufus was pulling a soccer goal up the driveway at the time the dogs left their yard. Rufus began screaming and yelling as the dogs came towards them. Reggie knocked over the neighbor boy and bit him, leaving a "tiny little hole in his baseball pants[.]" Teddy charged at Rufus' older son. Rufus'

children ran inside and her older son was crying following the incident. Rufus herself was shaken up by the events. Shortly thereafter, the dogs met up with Cappara, who heard the commotion and turned back to take the dogs home. After the incident, Cappara went to the Rufus' house to ask if everyone was alright. She was informed that the neighbor boy had been bitten.

{¶3} Ultimately, Rufus called the police and reported the incident. The Avon Lake City Prosecutor sent Cappara a notice that the Avon Lake Police Department had designated her dogs as nuisance dogs. The notice quoted the Ohio Revised Code definition of nuisance dog. Cappara was informed that she could appeal the determination by requesting a hearing through the Avon Lake Municipal Court. The notice cited to Avon Lake Codified Ordinances ("Loc. Ord.") 618.01, 618.17, 618.18 and 618.20 and R.C. 955.222 and 955.11.

{¶4} Cappara sought review of the determination and a hearing was held. The trial court concluded that the dogs were nuisance dogs based upon the testimony and video evidence submitted at the hearing. Cappara and her husband filed pro se motions, which were construed as motions for reconsideration. Their motions were denied following a non-evidentiary hearing. Cappara has appealed the trial court's determination that the dogs were nuisance dogs, raising five assignments of error for our review.[1]

II.

## ASSIGNMENT OF ERROR I

TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AFFIRMED THE DECISION OF THE CITY OF AVON LAKE TO DESIGNATE MRS.

---

[1] While Cappara mentions the trial court's ruling on her motion for reconsideration in her brief on appeal, to the extent that entry may have been appealable, *see Culgan v. Miller,* 9th Dist. Medina No. 10CA0074-M, 2011-Ohio-6194, ¶ 9, that entry was not listed in Cappara's notice of appeal. *See State v. Mason*, 9th Dist. Summit No. 27715, 2016-Ohio-7081, ¶ 12-14. Thus, this Court cannot address these issues in this appeal.

CAPPARA'S DOGS "NUISANCE DOGS" THOUGH THE CITY FAILED TO COMPLY WITH ITS OWN PROCEDURAL AND LEGAL REQUIREMENTS FOR SO DESIGNATING A DOG.

**{¶5}** Cappara argues in her first assignment of error that the trial court erred in designating the dogs nuisance dogs when Defendant-Appellee the City of Avon Lake ("the City") failed to comply with the requirements of Loc. Ord. 618.18(b).

**{¶6}** Loc. Ord. 618.18(b) states:

The Police Chief shall have authority to determine whether a dog is a nuisance dog, dangerous dog, or vicious dog. This determination may be based upon an investigation that includes observation of and testimony about the dog's behavior, including the dog's upbringing and the owner's or keeper's control of the dog, and other relevant evidence as determined by the Police Chief. These observations and testimony can be provided by any witness who personally observed the behavior. *Such witness shall sign a written statement attesting to the observed behavior and agree to provide testimony regarding the dog's behavior.* Forms for providing witness testimony shall be made available at the Police Department.

(Emphasis added.)

**{¶7}** At the hearing, prior to the beginning of testimony, Cappara asserted that the ordinance required that she be "given a written statement," which she later referred to as a complaint. The trial court told Cappara that there was no complaint in these cases, and instead informed her that she would have received a notice, which the prosecution then submitted into evidence. Cappara admitted to receiving the notice. Cappara did not then otherwise object or request that the designation be rescinded in absence of a written statement.

**{¶8}** While Cappara appeared pro se at the hearing, she is still "presumed to have knowledge of the law and correct legal procedures so that [s]he remains subject to the same rules and procedures to which represented litigants are bound. [Sh]e is not given greater rights than represented parties, and must bear the consequences of h[er] mistakes." (Internal quotations and citations omitted.) *Lathan v. Andrews*, 9th Dist. Summit No. 28382, 2017-Ohio-4419, ¶ 12.

Even assuming that Cappara could be viewed as having objected to not receiving the written statement, we see nothing in the plain language of the ordinance that requires that she be provided with a copy of the written statement in order for the designation to be valid. Further, nothing in the plain language of the ordinance suggests that the written statement must be included in the record of any appeal of the nuisance dog determination. Finally, Cappara has not explained how she was prejudiced by the absence of a written statement in light of the notice she received and the subsequent hearing at which the trial court reviewed the propriety of the nuisance dog designation. *See* Civ.R. 61.

{¶9} Given all of the foregoing, Cappara's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN, REVERSIBLE ERROR AS A MATTER OF LAW WHEN IT DENIED MR. CAPPARA THE RIGHT TO DEFEND, WHICH RIGHT IS AFFORDED HIM BY THE AVON LAKE MUNICIPAL CODE.

{¶10} Cappara argues in her second assignment of error that the trial court erred in not allowing her husband "the opportunity to object to the designation and defend the dog[s]."

{¶11} It appears that Cappara is referring to the point in the transcript during which Cappara's husband sought to cross-examine the City's first witness, Rufus, and the trial court refused to let him do so, noting that he was not an attorney or a party. Cappara has not challenged the trial court's statement that her husband was neither an attorney nor a party. On appeal, Cappara argues that her husband had a right to defend the dogs based upon Loc. Ord. 618.25(a).

{¶12} Initially we note that Cappara's reliance on Loc. Ord. 618.25(a) is misplaced. That ordinance addresses the right to an administrative hearing if a dog is classified pursuant to Loc. Ord. 618.21 or 618.24 or is denied declassification under Loc. Ord. 618.23. Loc. Ord.

618.21 relates to "potential nuisance" dogs. Loc. Ord. 618.24 addresses dogs classified by another jurisdiction. Finally, Loc. Ord. 618.23 concerns the declassification of dogs that have been classified for a specified period of time. Cappara's hearing was not an administrative hearing and the classifications that are the subject of Loc. Ord. 618.25(a) are not applicable to Cappara's dogs' situation.

{¶13} Additionally, Cappara herself was permitted to question the City's witness and her husband was allowed to testify at the hearing. Cappara has not explained how *she* was prejudiced by her husband not being allowed to question the City's witness at the hearing. *See Well Fargo Bank, N.A. v. Kessler*, 10th Dist. Franklin No. 15AP-216, 2015-Ohio-5085, ¶ 23 ("Generally, a party does not have standing to prosecute an appeal to protect the rights of a third party."); *see also In re K.M.*, 9th Dist. Medina No. 14CA0025-M, 2014-Ohio-4268, ¶ 36 ("On appeal, Father is limited to challenging how the trial court's decision impacted his rights, rather than the rights of third parties."); Civ.R. 61.

{¶14} Cappara's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ADMITTING INTO EVIDENCE, AND ULTIMATELY RELYING UPON, AN UNAUTHENTICATED SURVEILLANCE VIDEO, WHICH WAS NOT PROVIDED TO MRS. CAPPARA IN ADVANCE OF THE HEARING.

{¶15} Cappara argues in her third assignment of error that the trial court erred in admitting and relying upon surveillance video.

{¶16} While there was discussion on the record indicating that Cappara and her husband had not seen the surveillance video that was played and admitted into evidence, Cappara did not object to the viewing or admission of the video. Thus, Cappara is limited to arguing plain error on appeal. *See Wiegand v. Fabrizi Trucking & Paving Co., Inc.*, 9th Dist. Medina No.

16CA0015-M, 2017-Ohio-363, ¶ 12. However, as Cappara has not developed a plain error argument, we decline to construct one for her. *See id*.

{¶17} Cappara's third assignment of error is overruled on that basis.

<u>**ASSIGNMENT OF ERROR IV**</u>

THE TRIAL COURT'S FINDINGS OF FACT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶18} Cappara argues in her fourth assignment of error that the trial court's finding that the dogs were nuisance dogs was against the manifest weight of the evidence. Specifically, Cappara maintains that the trial court's assertion "that the video evidence makes it 'clear' is clearly erroneous." Cappara complains that the video is blurry and that, from the video, it is difficult to decipher what really occurred. Additionally, Cappara argues that the evidence does not support that the neighbor boy "was placed in a state of fear, as required by R.C. 955.11[.]"

{¶19} "When an appellant challenges the weight of the evidence in a civil case, this Court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Lubanovich v. McGlocklin*, 9th Dist. Medina No. 14CA0081-M, 2015-Ohio-4618, ¶ 5, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. [T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." (Internal quotations and citations omitted.) *T.S. v. R.S.*, 9th Dist. Summit No. 27955, 2017-Ohio-281, ¶ 4.

{¶20} Loc. Ord. 618.18(b) states in part that "[t]he Police Chief shall have authority to determine whether a dog is a nuisance dog, dangerous dog, or vicious dog." "If the owner,

keeper, or harborer of the dog disagrees with the designation of the dog as a nuisance dog, dangerous dog, or vicious dog, as applicable, the owner, keeper, or harborer may request a hearing regarding the determination pursuant to Ohio R.C. 955.222." Loc. Ord. 618.18(e). R.C. 955.222(C) states in relevant part that, "[a]t the hearing, the person who designated the dog as a nuisance dog, dangerous dog, or vicious dog has the burden of proving, by clear and convincing evidence, that the dog is a nuisance dog, dangerous dog, or vicious dog." "The Supreme Court of Ohio has defined clear and convincing evidence as '[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt in criminal cases. It does not mean clear and unequivocal.'" *Pflaum v. Summit Cty. Animal Control,* 9th Dist. Summit No. 28335, 2017-Ohio-4166, ¶ 15, quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986).

{¶21} Loc. Ord. 618.18(a) provides that, "[a]s used in this section, 'nuisance dog,' 'dangerous dog,' and 'vicious dog' have the same meanings as in Ohio R.C. 955.11." R.C. 955.11(A)(3)(a) states, in relevant part, that "'nuisance dog' means a dog that without provocation and while off the premises of its owner, keeper, or harborer has chased or approached a person in either a menacing fashion or an apparent attitude of attack or has attempted to bite or otherwise endanger any person." Pursuant to Loc. Ord. 618.17(b), "'without provocation' in Sections 618.18 and 618.20 shall mean that a dog was not teased by a person or animal, tormented by a person or animal, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." "'Menacing fashion' means that

a dog would cause any person being chased or approached to reasonably believe that the dog will cause physical injury to that person." R.C. 955.11(A)(2); *see* Loc. Ord. 618.17(a).

**{¶22}** Initially, we note that we are uncertain where in the record the trial court indicated that the video evidence made anything "clear." Cappara does not refer the Court to the location in the record where the trial court made such a statement, *see* App.R. 16(A)(7), nor has this Court located a reference in the judgment entry being appealed or in the trial court's discussion of its decision in the transcript from the hearing. Neither the trial court's judgment entry nor the transcript expresses that the trial court placed extraordinary weight on the video as compared to the testimony.

**{¶23}** With respect to Cappara's contention that the weight of the evidence does not support that the children were in a "state of fear, as required by R.C. 955.11," we see nothing in the text of R.C. 955.11 that mentions fear or apprehension. Moreover, Cappara has not pointed this Court to any authority that includes a requirement that a dog place a person in a state of fear in order for the dog to be designated a nuisance dog as defined by R.C. 955.11(A)(3). *See* App.R. 16(A)(7).

**{¶24}** The City presented the testimony of Rufus and Cappara, as well as videos of the incident. That testimony supports the following narrative. On June 29, 2016, Cappara left her yard and went for a bike ride. Cappara's two dogs, Teddy and Reggie, went through the electric fence and left the yard after her. Cappara's husband was in the Capparas' front yard at the time. The dogs ran across the street into the driveway and tree lawn area of Rufus' property where Rufus' two sons and a neighbor boy were playing. Rufus was pulling a soccer goal up the driveway.

{¶25} Rufus believed the dogs to be aggressive as they had previously charged and barked at her youngest son when he was on the sidewalk in front of the Cappara's house. According to Rufus, the dogs "charg[e] and bark[] at anyone who comes on their sidewalk." However, Rufus had not seen the dogs leave their yard until the day of the incident. Rufus began screaming and yelling as the dogs came towards them. Reggie knocked over the neighbor boy and bit him, leaving a "tiny little hole in his baseball pants[.]" Rufus "saw th[e] dog grab [the neighbor boy's] leg." Teddy charged at Rufus' older son. Rufus' children ran inside and her older son was crying following the incident. Rufus herself was shaken up by the events. She did not observe the children do anything to provoke the dogs.

{¶26} The videos admitted into evidence demonstrate that the incident occurred over a matter of only seconds. The videos of the incident were taken from cameras located near Cappara's garage and front door and thus the cameras appear to be a great distance from where the incident takes places. Therefore, the figures of the children, Rufus, and the dogs are indistinct and pixelated. One of the videos depicts a figure, which Rufus testified was the neighbor boy, walking on the sidewalk, through the Rufus' driveway, towards the sidewalk near the Rufus' yard. Around this time, the dogs run near the neighbor boy and it appears the neighbor ends up on the ground. One of the dogs also appears to turn and run towards another figure and then that figure runs towards the house.

{¶27} Cappara disputed the allegations and maintained that the dogs did not bite or chase the children. She presented her own testimony and that of her husband. Cappara saw the neighbor boy sitting on the ground when she rode by and thus believed it was unlikely he was knocked to the ground. Cappara did not observe the incident but heard the yelling and commotion and turned around and saw the dogs loose. According to Cappara, when she called

the dogs back, they immediately came to her. After the incident, Cappara went to the Rufus' house to ask if everyone was alright. She was informed that the neighbor boy had been bitten. Cappara then went and spoke with the neighbor boy's mother and the neighbor boy who both indicated that he was okay. Cappara asked to see the boy's injury and observed only a scratch below his left knee.

{¶28} Cappara's husband witnessed the incident and claimed that June 29, 2016, was the first time the dogs had ever gone through the electric fence. Cappara's husband observed the dogs leave the yard but maintained that they were following Cappara, not going after the children. According to Cappara's husband, the dogs ran by the neighbor boy. Reggie may have scratched the neighbor boy, as a friendly gesture, because the dog knew the neighbor boy, but Cappara's husband did not observe the dog bite anyone. Cappara's husband then saw Teddy circle back towards Reggie and then both dogs ran after Cappara.

{¶29} Cappara asserts on appeal that the photos of the neighbor boy do not evidence a bite, thus, discrediting Rufus' version of events. The photos at issue are somewhat blurry and depict what appears to be a scratch and an area of slight redness on the boy's leg. First, we note it is not clear that the photos were considered by the trial court. While they were on the disc that was admitted into evidence, the only portions of the disc that appeared to be viewed during the trial were the portions containing the surveillance video. When the trial court admitted Defendant's Exhibit 2, it stated that, the trial court would "retain the scanned disk thumb drive, as well as the DVD as Exhibit 2 containing some video exhibits – or video images[.]" Thus, it is not clear to this Court that the photos were part of the evidence considered by the trial court. Assuming they were admitted and considered, Rufus testified that the bite left a "tiny little hole in [the neighbor boy's] baseball pants[.]" Given that testimony, and the testimony from Cappara

herself, wherein she testified that she learned the boy was okay and observed only a superficial scratch, a trier of fact would not have to view the photos as being inconsistent with Rufus' testimony. Cappara's own testimony did not indicate that the neighbor boy suffered severe injury from the bite.

{¶30} After a thorough and independent review of the record, we cannot say the trier of fact lost its way in determining the dogs were nuisance dogs. There was undisputed evidence that the dogs left their yard. Further, there was testimony that Reggie knocked over and bit the neighbor boy and testimony that Teddy charged Rufus' older son. The videos do not discredit Rufus' testimony. While the videos are not clear, from them, a trier of fact could deduce circumstantial evidence to support Rufus' testimony. The videos depict the neighbor boy up and walking prior to when the dogs ran by and then, as the dogs got close, the neighbor boy ended up on the ground. The detail of what happened is unclear, but it would not be unreasonable for a trier of fact to infer, particularly in light of Rufus' testimony, that the neighbor boy was knocked to the ground by one of Cappara's dogs. In addition, it appears that one of the dogs did run towards one of the other children. That child then ran towards the house.

{¶31} We cannot say that the trial court lost its way in determining that the dogs, without provocation and while off the premises of Cappara, "chased or approached a person in either a menacing fashion or an apparent attitude of attack or [] attempted to bite or otherwise endanger any person." R.C. 955.11(A)(3)(a).

{¶32} Cappara's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN HEARING MRS. CAPPARA'S APPEAL OF THE CITY DESIGNATION OF HER DOGS AS "NUISANCE DOGS" BECAUSE THE JUDGE SHOULD HAVE RECUSED HIMSELF.

**{¶33}** Cappara argues in her fifth assignment of error that the trial court erred in conducting the hearing in the instant matter because the judge was biased and should have recused himself.

**{¶34}** First we note that the facts related to Cappara's allegations of the trial court's bias are not contained in the record. This Court cannot consider matters outside the record in resolving the merits of appeals. *See In re J.C.*, 186 Ohio App.3d 243, 2010-Ohio-637, ¶ 15 (9th Dist.) ("Matters outside the record cannot be used to demonstrate error[.]"). Further, "[o]rdinarily, matters pertaining to judicial bias may only be heard by the Chief Justice of the Ohio Supreme Court or his or her designees." *King v. Rubber City Arches, L.L.C.*, 9th Dist. Summit No. 25498, 2011-Ohio-2240, ¶ 6.

**{¶35}** Given both of the foregoing, Cappara's fifth assignment of error is overruled.

III.

**{¶36}** Cappara's assignments of error are overruled. The judgment of the Avon Lake Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Avon Lake Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                 _____

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

MATTHEW O. WILLIAMS, Attorney at Law, for Appellant.

JOHN L. REULBACH, JR., Attorney at Law, for Appellee.